UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
--------------------------------------------------------- X

DEANNA MARLENE BELLAVIA aka
DEANNA KING,

                               Plaintiff,

             v.

ORLEANS COUNTY, ORLEANS COUNTY
SHERIFF'S DEPARTMENT, ORLEANS
COUNTY DISTRICT ATTORNEY, COREY
BLACK, DEPUTY JOHN DOE, and DAVID
BELLAVIA,


                             Defendants.

--------------------------------------------------------- X

**COMPLAINT**

Civil Action No.  22-842


<u>Trial by Jury</u>

     Plaintiff DEANNA KING, by and through her attorneys, ADVOCATES

FOR JUSTICE, CHARTERED ATTORNEYS, as and for this Complaint, alleges

as follows:


## **PARTIES**

    1.     Plaintiff, DEANNA KING, is a resident of Batavia, New York in

Genesee County.

2.      Defendants, ORLEANS COUNTY, ORLEANS COUNTY

SHERRIFF'S DEPARTMENT, and ORLEANS COUNTY DISTRICT

ATTORNEY have an address of 14016 Route 31 West, Albion, New York,14411.

3.      Defendant COREY BLACK is an investigator from Defendant

ORLEANS COUNTY DISTRICT ATTORNEY and a former deputy of Defendant

ORLEANS COUNTY SHERIFF'S DEPARTMENT, and has a work address of

14016 Route 31 West, Albion, New York,14411.

4.      Defendant DEPUTY JOHN DOE is a deputy of Defendant

ORLEANS COUNTY SHERIFF'S DEPARTMENT.

5.      Defendant DAVID BELLAVIA is a resident of Florida and is

Plaintiff's former spouse.

## FACTS RELEVANT TO ALL CLAIMS

6.      Plaintiff is a well-known television and radio personality in the

Rochester, New York area, with over 20 years-experience. She is the mother of

three children. She resides in Batavia, New York.

7.      Defendant Bellavia is rightwing political provocateur and radio host.

His work focuses on culture issues and political flash points, such as conspiracies

regarding COVID vaccines.  He is most well-known, however, for receiving the

Medal of Honor in 2019 from former President Donald Trump for heroics in Iraq.

Separately, he is staunch Trump supporter, having worked on this campaign in 2016.

He parlayed notoriety from his association with Trump and known Trump associates including Michael Caputo and Carl Paladino into several lucrative contracts, book deals, and memberships on various boards. Bellavia is also known for several unsuccessful political campaigns. His radio show broadcasts in Buffalo, New York, and the surrounding areas, where his children reside, but he is a current resident of Naples Florida.

8.      Plaintiff and Defendant Bellavia were married in 1999.

9.      In the early years of their marriage, Plaintiff and Defendant Bellavia lived apart because Defendant Bellavia was stationed overseas. They had a young child, the parties had little money, and Plaintiff did not have a passport.

10.      During this time, Plaintiff wrote ink and paper love letters to Defendant Bellavia several times a week and often sent him care packages. The letters (some of which she has saved) included numerous recitations of the words "I love you" and "I miss you." Notably, Defendant Bellavia recognized Plaintiff's support in this first book, "House to House: An Epic Memoir of War."

11.      Despite Plaintiff's attempts to support, Defendant Bellavia had flashes of aggression and abuse, which became more common over time.

12.      Since the early days of their marriage, Defendant Bellavia consistently berated and verbally abused Plaintiff in person. He engaged in this abhorrent conduct through text messages once they acquired mobile phones. Over time this abuse

became increasingly more violent (throwing and breaking items and directing abuse

toward Plaintiff and their children).

13.   As examples, he called Plaintiff:

- "Ass hole,"
- "Cunt," (many times),
- "selfish bitch,"
- "lying cunt,"
- "disloyal worthless person,"
- "fucking idiot,"
- "ungrateful piece of shit,"
- "two-faced piece of shit,"
- "piece of shit,"
- "fucking scum bag,"
- "Fucking worthless,"
- "Fucking loser,"
- "evil fat troll,"
- "fucking tower of shame,"
- "bitch,"
- "fucking liar,"
- "raging cunt,"
- "lazy bitch,"
- "chubby whore,"
- "fucking moron,"
- "jealous fat cunt with chubby arms,"
- "fucking wannabe,"
- "loser,"
- "freeloading cunt,"
- "dirty dirty whore."

14.   Defendant repeatedly (in person, on video (documented), and through texts messages) threatened Plaintiff with violence and wished her harm, for example:

- "I will fucking gouge your eyes out with a Philips head,"
- "I hope you die" (repeatedly) and "fuck off,"
- "I literally hope you fall and lose all your teeth,"
- telling her to buy rope and hang herself,
- "I would literally do anything for you to have a frontal lobe transplant,"

- "I hope you get herpes"
- And also threats that he could kill her and hide the evidence

15.     Defendant Bellavia repeatedly mocked Plaintiff's struggles with bulimia, depression, and mental health, and insulted Plaintiff's family calling them "white trash," "loser underachiev[ers]," "autistic and ugly," and similar insults.

16.     Defendant Bellavia also abused and insulted his own children, calling his sons "a lost cause," "fucking waste," "fucking moron," "fucking retard," "fucking idiot," "fucking serial killer," and stating "I can see her getting knocked up" about his 9-year-old daughter.

17.     Plaintiff would engage with Bellavia to defend herself and her children, especially in situations when her children would hide from Defendant Bellavia's violent outbursts.  Plaintiff's parents would also often intercede to ensure the safety of their daughter and grandchildren.

18.     From 2019 to 2021, Plaintiff and Defendant Bellavia were thus engaged in a very contentious divorce.

19.     During the divorce proceedings, Defendant Bellavia, continued his abusive behavior, and enlisted his friends and associates, including representatives of law enforcement and the US justice system, to harass and humiliate and discredit Plaintiff should she ever make evidence of their public in her defense.

20.    Plaintiff and Defendant Bellavia's divorce was before Judge Charles Zambito, who knew Mr. Bellavia personally and even endorsed him for his run for Congress 2012.

21.    Because of Mr. Bellavia's long-standing relationship with Judge Zambito, Plaintiff was distressed by the forum of her divorce, and feared that Judge Zambito would show preference toward Defendant Bellavia.

22.    Repeatedly, throughout the course of the divorce proceedings, Judge Zambito ignored evidence of domestic abuse and extreme harassment by Defendant Bellavia—even attempting to pressure Plaintiff to sign a non-disclosure agreement regarding the divorce proceedings—which she refused.

23.    For example, Plaintiff pleaded with Judge Zambito to stop Defendant Bellavia's limited visits with their children because they caused the children anxiety and fear during their interactions with their father.

24.    At one point during the proceedings, Defendant Bellavia visited the Plaintiff and told her in front of her children, "Cunt, you're going to have to sell your house." Plaintiff then said that a judge would never make her do that. Plaintiff recorded this and the recorded Defendant Bellavia's shrill response, "A judge? I got a judge! Bring it bitch!"

25.     Plaintiff then asked Defendant Bellavia if their judge was on Defendant Bellavia's "payroll." At that point, Defendant Bellavia noticed she was recording and smacked the phone out of her hand. He then left.

26.     Despite these incidents, like many of her other requests, Judge Zambito denied Plaintiff's request and allowed visits to continue.

27.     Thankfully, lawyers appointed on behalf of the children, intervened and asked the court to limit Defendant Bellavia's interaction with their two minor children.

28.     Also, because of Defendant Bellavia's continuing abuse and harassment of Plaintiff via text, and upon the recommendation of the children's legal representatives, the Court ordered Defendant Bellavia exclusively to use a parenting app ("App Close," which records all communications) to communicate with Plaintiff.

29.     On January 27, 2021, Defendant Investigator Corey Black, who is a right-wing political activist, lifelong friend of Defendant Bellavia, an investigator for the Orleans County District Attorney and a former Deputy of the Orleans Sheriff's Department, arrested Plaintiff without authority and without probable cause.

30.     In effecting the arrest, Defendant Investigator Black posed as a Sheriff's Deputy, with the consent of the Orleans County Sheriff's Department, and

conspired with Defendant Bellavia and Defendant John Doe to falsely arrest and imprison Ms. King, to discredit, humiliate, and otherwise continue the prosecution against her.

31.     Specifically, on January 26, 2021, Defendant Investigator Black called Plaintiff, falsely stated he was from Orleans County Sheriff's Department, and informed Plaintiff there was a warrant out for her arrest for harassment in Orleans County.

32.     Plaintiff does not live in and rarely travels to Orleans County.

33.     Orleans County, however, is the location of Defendant Bellavia's former childhood home and the current location of many of his friends and acquaintances, including Defendant Investigator Black.

34.     Plaintiff suspected the call was a prank, so she hung up and called the Defendant Orleans County Sheriff's Department directly asking if the call was "real."

35.     She also asked, "Is there a warrant out for me?"

36.     Defendant Orleans County Sheriff's Department refused to answer Plaintiff.

37.     Plaintiff was scared and confused.  She called her brother-in-law, an Undersheriff in Genesee County where she lives, and her brother-in-law confirmed that Defendant Investigator Black called the Genesee County Sheriff's Department

8

and asked if them to send a car to Plaintiff's house, arrest her, and transport her to Orleans County.

38.     Defendant Investigator Black agreed to allow Plaintiff to turn herself in the next day if her brother-in-law escorted her. Defendant Investigator Black claimed this was a "professional courtesy" to him.

39.     Hearing this, Plaintiff called Defendant Investigatory Black and asked for more information. He said that he could not explain the details, but he was offering her an opportunity to turn herself in voluntary because she is sister-in-law to a Genesee County Undersheriff.

40.     Plaintiff was alone with her minor children when Defendant Investigator Black asked police to come and arrest her. Panicked, she made arrangements to have her children looked after and made the long drive to Orleans County the next day, accompanied by her brother-in-law.

41.     Driving, she contemplated the long-term damage news of her arrest would cause to her children. She also contemplated the negative impact it could have on her career in entertainment and her general reputation.

42.     In Orleans County, Plaintiff was fingerprinted and forced to take a mug shot.

43.     She met with Defendant Investigator Black in a room in the Orleans County Public Safety Building.

44.     At this point, Plaintiff believed that Defendant Investigator Black was a Deputy from the Orleans County Sheriff's Department.

45.     Plaintiff asked why she was being arrested, and Defendant Investigator Black showed her a screen shot of Defendant Bellavia's phone log documenting a call from the couple's minor son regarding an issue with health insurance coverage, and a message on AppClose from Plaintiff requesting that Defendant Bellavia get a COVID test before the next visit with their children.  It was the height of the pandemic, and Defendant Bellavia traveled nationally to large speaking engagements for his work.

46.     When Plaintiff expressed disbelief, Defendant Investigator Black cryptically and rather threateningly responded, "There's more to it than that, but David didn't want to pursue it."

47.     Defendant Investigator Black then confirmed that he and Defendant Bellavia are good friends.

48.     Plaintiff met alone with Defendant Investigator Black and her brother-in-law except for the brief period when Defendant Investigator Black read the charges against her.  At that time, a Deputy, Defendant John Doe, entered the room. He did not say anything, and Plaintiff was never apprised of his name.

49.     Defendant Investigator Black knowingly engaged in the above conduct without probable cause for Plaintiff's arrest.

50.     Defendant Deputy John Doe engaged in the above conduct with the knowledge that Defendant Investigator Black is not a Sheriff's Deputy.

51.     Defendant Deputy John Doe knowingly engaged in the above conduct without probable cause for Plaintiff's arrest.

52.     Defendant Orleans County permitted Defendant Investigator Black and Defendant Deputy Doe to arrest Plaintiff without probable cause.

53.     Defendant Orleans County permitted Defendant Investigator Black and Defendant Deputy Doe to arrest Plaintiff at the instigation of Defendant Bellavia as a personal and/or political favor.

54.     Plaintiff, who had never broken a law in her life, then faced her arraignment before the court.

55.     When Plaintiff subsequently communicated with Defendant Bellavia, Defendant Bellavia knew details about her arrest including comments she made to Defendant Investigator Black when she appeared for arrest.

56.     In the months to come, Plaintiff was required to appear repeatedly in criminal court to address the charges against her.

57.     Intimidated and to avoid undue scrutiny and fearful again of possibly biased legal forum Plaintiff agreed to an Adjournment in Contemplation of Dismissal.

58.     The charges against Plaintiff have since been dismissed.

59. To this day, she remains haunted by the experience, and fearful of Mr. Bellavia and the Orleans County Sheriff's Department.

60. The divorce was finalized in December of 2021, and today Defendant Bellavia lives in Florida and has limited interaction with his children or Plaintiff.

## AS AND FOR A FIRST
## CAUSE OF ACTION
### (For Violation of the Fourth Amendment as against Defendants Orleans County, Orleans County Sheriff's Department, Orleans County District Attorney, Corey Black and Deputy John Doe)

61. Plaintiff repeats and realleges each and every allegation contained in the paragraphs previously set forth.

62. The policies and conduct of the defendants violated her right to be free of unreasonable searches and seizures in violation of the Fourth Amendment to the United States Constitution.

63. As a direct and proximate result of the unlawful policies and acts of the defendants described herein, the plaintiff has incurred economic damage and damage to her reputation and still suffers both physical pain and suffering and psychiatric injury all to plaintiff's damage in an amount which exceeds the jurisdictional monetary threshold of the Court, the specific amount to be proven at trial, plus reasonable attorneys' fees, costs and disbursements.

64.    The defendants acted willfully, maliciously and/or with reckless disregard of the consequences of their actions. Accordingly, plaintiff is entitled to an award of punitive damages.

## AS AND FOR A SECOND CAUSE OF ACTION

**(For Violation of the Fourteenth Amendment as against Defendants Orleans County, Orleans County Sheriff's Department, Orleans County District Attorney, Corey Black and Deputy John Doe)**

65.    Plaintiff repeats and realleges each and every allegation contained in the paragraphs previously set forth.

66.    The policies and intentional conduct of the defendants in furtherance of a personal and/or political vendetta deprived the plaintiff of her right to equal protection of the laws in violation of the Fourteenth Amendment to the United States Constitution.

67.    As a direct and proximate result of the unlawful policies and acts of the defendants described herein, the plaintiff has incurred economic damage including a loss of gainful employment and damage to his reputation and still suffers both physical pain and suffering and psychiatric injury all to plaintiff's damage in an amount which exceeds the jurisdictional monetary threshold of the Court, the specific amount to be proven at trial, plus reasonable attorneys' fees, costs and disbursements.

68.     The defendants acted willfully, maliciously and/or with reckless disregard of the consequences of their actions. Accordingly, plaintiff is entitled to an award of punitive damages.

## AS AND FOR A THIRD
## CAUSE OF ACTION
**(For Malicious Prosecution as Against Defendants Corey Black and John Doe)**

69.     Plaintiff repeats and realleges each and every allegation contained in the paragraphs previously set forth.

70.     The conduct of the defendant Corey Black and John Doe constituted malicious prosecution because it was carried out in pursuit of a personal vendetta and without any basis in law or fact and without sufficient factual information.

71.     As a direct and proximate result of the unlawful acts of the defendants described herein, the plaintiff has incurred economic damage including a loss of gainful employment and damage to his reputation and still suffers both physical pain and suffering and psychiatric injury all to plaintiff's damage in an amount which exceeds the jurisdictional monetary threshold of the Court, the specific amount to be proven at trial, plus reasonable attorneys' fees, costs and disbursements.

72.     The defendants acted willfully, maliciously and/or with reckless disregard of the consequences of their actions. Accordingly, plaintiff is entitled to an award of punitive damages.

## AS AND FOR A FOURTH
## CAUSE OF ACTION
**(Conspiracy Under § as Against Defendants Corey Black, John Doe and David Bellavia)**

73.     Plaintiff repeats and realleges each and every allegation contained in the paragraphs previously set forth.

74.     The conduct of the defendants Corey Black, John Doe and David Bellavia constituted conspiracy to violate Plaintiff's constitutional rights because the aforenamed defendants agreed to act together to effectuate Plaintiff's arrest, in pursuit of a personal and/or political vendetta, to inflict Constitutional injuries upon Plaintiff, and by the overt act of knowingly causing her to be arrested and prosecuted without probable cause.

By acting as aforedescribed, Defendant has violated the Constitution.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that this Court enter judgment awarding Plaintiff:

a.     compensatory damages, jointly and severally, in an amount to be

determined at trial;

b.     punitive damages against all individual defendants in an amount to be

determined at trial that will deter such conduct by defendants in the future;

c.     pre-judgment and post-judgment interest and recovery of his costs,

including reasonable attorneys' fees pursuant to 42 U.S.C. § 1988 for all 42 U.S.C.

§ 1983 claims; and

d.     attorneys' fees and cost; and

e.     such other relief as the Court finds equitable.

Dated:     New York, New York
           October 21, 2022

ADVOCATES FOR JUSTICE,
CHARTERED ATTORNEYS
*Attorneys for Plaintiff*

By:_____*Nathan McMurray*_____
           Nathan McMurray
225 Broadway, Suite 225
New York, New York 10007
(212) 285-1400/917-923-8136
Email: aschwartz@afjlaw.com