UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

DEANNA MARLENE BELLAVIA aka
DEANNA KING,

                    Plaintiff,

        vs.                                              **Case No.:  22-CV-842**

ORLEANS COUNTY, ORLEANS COUNTY SHERIFF'S
DEPARTMENT, ORLEANS COUNTY DISTRICT
ATTORNEY, COREY BLACK, DEPUTY JOHN DOE,
and DAVID BELLAVIA,

                    Defendant.

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT DAVID BELLAVIA'S MOTION TO DISMISS

Dated: December 22, 2022                    WOODS OVIATT GILMAN LLP
                                            Donald W. O'Brien, Jr., Esq.
                                            *Attorneys for Defendant*
                                               *David Bellavia*
                                            1900 Bausch and Lomb Place
                                            Rochester, New York 14604
                                            585.987.2800
                                            dobrien@woodsoviatt.com

{9061525: }

# <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF AUTHORITIES ................................................................................ ii

PRELIMINARY STATEMENT ......................................................................... 1

ARGUMENT ...................................................................................................... 2

      1.    Legal Standard on a Motion to Dismiss for Failure to State a Claim ............ 2

      2.    Plaintiff's Allegations of a Conspiracy to Violate Her Rights Are Inadequate ................................................................................................... 3

      3.    Paragraphs 11 through 17 and 19 through 28 of Plaintiff's Complaint Should be Stricken ....................................................................................... 5

            A.    *Striking the Offending Allegations is Warranted* .............................. 6

            B.    *Plaintiff's Gratuitous Inclusion of Paragraphs 11 through 17 and 19 through 28 Violates the Bellavia's Judgment of Divorce and Related Documents* .......................................................................... 7

CONCLUSION .................................................................................................... 8

# TABLE OF AUTHORITIES

**Cases:**                                                                                              **Page(s)**

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)................................................................................................2

*Barnes v. County of Monroe,*
    85 F. Supp. 3d 696 (W.D.N.Y. 2015) ..................................................................5

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544 (2007)................................................................................................2

*Benavidez v. Gunnell,*
    722 F. 2d 615 (10th Cir. 1983) ............................................................................4

*Brown v. Sears Roebuck & Co.,*
    297 A.D. 2d 205 (1st Dept. 2002)........................................................................6

*Ciambriello v. County of Nassau,*
    292 F. 3d 307 (2d Cir. 2002)................................................................................5

*Delgado v. City of New York,*
    2021 U.S. Dist. LEXIS 113799 (S.D.N.Y., June 17, 2021)...................................6

*DeSantis v. Town of Cheektowaga,*
    2020 U.S. Dist. LEXIS 56086 (W.D.N.Y., March 31, 2020) .............................4

*EEOC v. Port Auth. of NY & N.J.,*
    768 F.3d 247 (2d Cir. 2014)................................................................................2

*Fair v. Rochester,*
    84 A.D. 2d 908 (4th Dept. 1981) ........................................................................6

*G-I Holdings v. Baron & Budd,*
    238 F. Supp. 2d 521 (S.D.N.Y. 2002)..................................................................7

*Installed Bldg. Prods., LLC v. Cottrell,*
    2014 U.S. Dist. LEXIS 101926 (W.D.N.Y. 2014) .............................................2

*Johns v. Home Depot U.S.A., Inc.,*
    221 F.R.D. 400 (S.D.N.Y. 2004) ........................................................................4

*Kamholtz v. Yates County,*
    2009 U.S. App. LEXIS 23788 (2d Cir., October 29, 2009)..................................7

*Kernan v. New York State Dep't of Fin. Servs.,*
    2017 U.S. App. LEXIS 22035 (2d Cir., November 2, 2017)................................3

*Kohlhausen v. SUNY Rockland Cmty. College,*
    2011 U.S. Dist. LEXIS (S.D.N.Y., July 13, 2011) .............................................3

*Lewis v. Locicero,*
    2016 U.S. Dist. LEXIS (Middle Dist. La., February 29, 2016) ...........................................3

*Middleton v. City of New York,*
    2006 U.S. Dist. LEXIS (E.D.N.Y., June 19, 2006) .........................................................4

*Ostensen v. Suffolk County,*
    2007 U.S. App. LEXIS 12183 (2d Cir., May 23, 2007) ...................................................5

*Pangburn v. Culbertson,*
    200 F. 3d 65 (2d Cir. 1999)..........................................................................................3

*San Filippo v. U.S. Trust Co.,*
    737 F. 2d 246 (2d Cir. 1984).........................................................................................4

*Scotto v. Alemenas,*
    143 F. 3d 105 (2d Cir. 1998).........................................................................................5

*Sobek v. Quattrochi,*
    2004 U.S. Dist. LEXIS 24584 (S.D.N.Y. 2004)..............................................................2

*Strauss v. Gold,*
    1984 U.S. Dist. LEXIS 17833 (S.D.N.Y., April 6, 1984) .................................................7

*Warren v. Fischl,*
    33 F. Supp. 2d 171 (E.D.N.Y. 1999) .............................................................................5

*White V. City of New York,*
    2019, U.S. Dist. LEXIS 54121 (S.D.N.Y., March 29, 2019) ...........................................4

## Other Authorities:

42 U.S.C. § 1983................................................................................................1, 3, 4

Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure
    § 1380 (3d Ed. 2004) ..................................................................................................7

F.R.C.P. 12(b)(6) ...............................................................................................1, 2

F.R.C.P. 12(f)...............................................................................................1, 5, 6, 7

## PRELIMINARY STATEMENT

Defendant, David Bellavia ("Mr. Bellavia"), makes this motion to dismiss the Complaint of his ex-wife, Plaintiff, Deanna Marlene Bellavia ("Plaintiff") as against him pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  This is an action in which the Plaintiff has asserted a variety of constitutional and common law violations against Orleans County, Orleans County Sheriff's Department, Orleans County District Attorney, Corey Black, and Deputy John Doe ("the Municipal Defendants"), and has also alleged a conspiracy against her by the individual defendants, including Mr. Bellavia, to violate her constitutional rights.  Although the Plaintiff has failed to identify the a specific section of the United States Code her conspiracy claim is based upon, we will assume for the purposes of this motion that this particular claim is brought under 42 U.S.C. § 1983.

The Plaintiff has failed to satisfy the applicable pleading standard.  Her claim against Mr. Bellavia is based on conclusory assertions unsupported by any factual details tending to show, or even raise an inference of, an agreement to deprive Plaintiff of her constitutional rights.  Rather, the conspiracy claim against Mr. Bellavia consists entirely of vague and general allegations of a conspiracy and relies upon mere conjecture and speculation.  For this reason, the Complaint against Mr. Bellavia should be dismissed.

In the alternative, Mr. Bellavia asks the Court to strike paragraphs 11 through 17 and 19 through 28 of the Complaint pursuant to Rule 12(f) of the Federal Rules of Civil Procedure because the information set forth therein is scandalous and prejudicial and has no bearing on the case.  Moreover, disclosure of the information contained in those paragraphs contravenes the Bellavia's Judgment of Divorce and their Matrimonial Final Settlement Agreement, as to which a corresponding motion to seal has been made.

**ARGUMENT**

**1.  Legal Standard on a Motion to Dismiss for Failure to State a Claim.**

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure must be granted where the pleadings fail to state a claim upon which relief can be granted.  To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim has facial plausibility where the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Legal conclusions and "threadbare recitals of the elements of a cause of action do not suffice to state a claim." *Id.*  Finally, "where an allegation is not stated in a complaint, it cannot be considered in connection with a motion to dismiss for failure to state a claim, which is addressed solely to the sufficiency of the complaint." *Sobek v. Quattrochi*, 2004 U.S. Dist. LEXIS 24584 (S.D.N.Y. 2004).

"*Twombly* and *Iqbal* require that a complaint **support** the viability of its claims by pleading sufficient non-conclusory factual matter to set forth a claim that is plausible on its face." *EEOC v. Port Auth. of NY & N.J.*, 768 F.3d 247, 253 (2d Cir. 2014) (*citing Twombly,* 550 U.S. at 555*; Iqbal,* 556 U.S. at 678) (emphasis in original). "[T]he tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 129 U.S. at 663. If a complaint lacks sufficient factual allegations to raise a plaintiff's claims "'above the speculative level,'" the claims must be dismissed as a matter of law. *EEOC*, 768 F.3d at 257 (*quoting Twombly).*  The pleading standard "demands more than an unadorned, the defendant-unlawfully-harmed me accusation." *Installed Bldg. Prods., LLC v. Cottrell*, 2014 U.S. Dist. LEXIS 101926, *8

(W.D.N.Y. 2014).

Here, the Complaint fails to support the Plaintiff's conspiracy claim against Mr. Bellavia (or the other individual defendants for that matter) with any plausible factual allegations (a copy of the Plaintiff's complaint is attached hereto as **Exhibit "A"**). As demonstrated below, Plaintiff has not, and cannot, adequately plead the required elements for her conspiracy claim. As a result, the Complaint in that regard fails to state a claim and should be dismissed as a matter of law.

**2.   Plaintiff's Allegations of a Conspiracy to Violate Her Rights Are Inadequate.**

A Plaintiff alleging a conspiracy under 42 U.S.C. § 1983 must show "(1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Pangburn v. Culbertson*, 200 F. 3d 65, 72 (2d Cir. 1999) (citations omitted). "Without any underlying facts to set forth the nature of the alleged conspiracy, the claims must be dismissed." *Kernan v. New York State Dep't of Fin. Servs.*, 2017 U.S. App. LEXIS 22035 at *8 (2d Cir., November 2, 2017).   "Vague and conclusory allegations that defendants have engaged in a conspiracy must be dismissed."

The allegations upon which the Plaintiff relies to support her conspiracy claim against Mr. Bellavia fall far short of what is required to demonstrate plausibility.  For example, in ¶ 29, Plaintiff alleges that Mr. Bellavia was a "lifelong" friend of Defendant, Corey Black.  However, allegations of friendship are not enough to support a conspiracy claim under § 1983, *Lewis v. Locicero,* 2016 U.S. Dist. LEXIS at *10 (Middle Dist. La., February 29, 2016) ["Plaintiff's conspiracy allegation is only supported by the allegation that Lockhart and Sheriff Ard are longtime friends, which is insufficient to support a conspiracy that satisfies the nexus or joint action test"], *see also, Kohlhausen v. SUNY Rockland Cmty. College,* 2011 U.S. Dist. LEXIS at

** 23-24 (S.D.N.Y., July 13, 2011) [mere friendship with, or influence over, a state actor is does not constitute an agreement or conspiracy.]; *Middleton v. City of New York,* 2006 U.S. Dist. LEXIS at *28 (E.D.N.Y., June 19, 2006) [friendship relationship insufficient to state claim for conspiracy].

Similarly, in ¶ 45, Plaintiff alleges that "Defendant Investigator Black showed her a screen shot of Defendant Bellavia's phone log documenting a call from the couple's minor son…" and "a message on AppClose from Plaintiff…"  In ¶ 55, she alleges that Mr. Bellavia was aware of Plaintiff's arrest.  Assuming these allegations are true, there is nothing sinister in Mr, Bellavia furnishing evidence to the Municipal Defendants upon which they based the harassment charges that resulted in Plaintiff's Adjournment in Contemplation of Dismissal (ACD).  *Mr. Bellavia does not deny that he was the complainant in the underlying criminal case.*  However, "it has long been held that a private party does not become a willful participant by merely invoking the assistance of the police." *DeSantis v. Town of Cheektowaga,* 2020 U.S. Dist. LEXIS 56086 at *34 (W.D.N.Y., March 31, 2020) *quoting, White V. City of New York,* 2019, U.S. Dist. LEXIS 54121 at *5 (S.D.N.Y., March 29, 2019); *Johns v. Home Depot U.S.A., Inc.,* 221 F.R.D. 400, 405 (S.D.N.Y. 2004) [private party who calls for police assistance in not rendered state actor under § 1983 even if the call caused plaintiff's detainment]. *Benavidez v. Gunnell,* 722 F. 2d 615, 618 (10th Cir. 1983) ["mere furnishing of information to police officers does not constitute joint action under color of state law which renders a private citizen a state actor under § 1983."

Indeed, it is to be expected that a complaining witness will meet or speak with law enforcement personnel before and after charges are filed.  In *San Filippo v. U.S. Trust Co.,* 737 F. 2d 246, 256 (2d Cir. 1984), the Second Circuit noted that there is "nothing suspicious or

improper in such meetings, which are routine and necessary in the preparation of evidence;" *see also, Ostensen v. Suffolk County,* 2007 U.S. App. LEXIS 12183 at * 6, (2d Cir., May 23, 2007) [characterizing such communications as "routine contact"]; *Scotto v. Alemenas,* 143 F. 3d 105, 114-15 (2d Cir. 1998) [private party and state actors "met and otherwise communicated on several occasions']. No inference can be drawn from allegations of routine contact between Mr. Bellavia and the state actors.

Here, the complaint is devoid of any facts which would show that Mr. Bellavia was acting in concert with the State Actors to deprive the Plaintiff of her constitutional rights. "While exact specifics are not required, the pleadings must present facts tending to show agreement and concerted action." *Barnes v. County of Monroe,* 85 F. Supp. 3d 696, 726 (W.D.N.Y. 2015) (citations omitted). "A plaintiff is required to "make an effort to provide some details of time and place and the alleged effects of the conspiracy…[including] facts to demonstrate that the defendants entered into an agreement, express or tacit, to achieve the unlawful end." *Warren v. Fischl,* 33 F. Supp. 2d 171, 177 (E.D.N.Y. 1999). Additionally, Plaintiff has failed to detail "the factual basis necessary to enable the [defendants] to prepare their defense." *Ciambriello v. County of Nassau,* 292 F. 3d 307, 325 (2d Cir. 2002). Because of these failings, the Plaintiff's complaint fails to state a claim against Mr. Bellavia and should be dismissed as against him.

### 3. Paragraphs 11 through 17 and 19 through 28 of the Plaintiff's Complaint Should Be Stricken.

#### A. *Striking the Offending Allegations Is Warranted.*

In pertinent part, Rule 12(f) of the Federal Rules of Civil Procedure states that: "[t]he Court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent or scandalous matter." A motion to strike may be made by a party before responding to the challenged pleading. Mr. Bellavia seeks to have paragraphs 11 through 28

The Plaintiff's Complaint purports to advance four claims for relief, a claim for "violation of the Fourteenth Amendment" as against the State Actors because she was allegedly subject to an illegal search and seizure (¶¶ 61 through 64), a claim for "violation of the Fourteenth Amendment" as against the State Actors because she was allegedly denied her right to equal protection (¶¶ 65 through 68), a claim for malicious prosecution against the individual Defendants, Corey Black and John Doe (¶¶ 69 through 72)[1] and a claim against the individual defendants, including Mr. Bellavia, for a "conspiracy to violate Plaintiff's constitutional rights" (¶¶ 73 and 74).

Paragraphs 11 through 17 and 19 through 28 of the Plaintiff's Complaint consist of allegations that Mr. Bellavia made numerous disparaging, vitriolic and lewd statements to and about Plaintiff or her children and allegations presenting Plaintiff's critique of the Court's handling of the divorce action between Plaintiff and Mr. Bellavia.  Notably, the divorce proceeding was concluded *before* Plaintiff's complaint was filed.  Plaintiff and her counsel, knowing that the Complaint would be a matter of public record and could cast Mr. Bellavia in a bad light, go to great lengths to list in graphic detail the disparaging remarks Mr. Bellavia was alleged to have made

Paragraphs 11 through 17 and 19 through 28, however, have no bearing on the single claim against Mr. Bellavia in the Complaint.  Rather, these highly prejudicial allegations appear to have been included to obtain leverage in this action and to compensate for the absence of any factual allegations to support her conspiracy claims.  *The truth or falsity of these challenged*

---

[1] Mr. Bellavia is not seeking dismissal of the Plaintiff's third claim for malicious prosecution since it is not directed at him.  It should be noted, however, that the Plaintiff's agreement to an Adjournment in Contemplation of Dismissal (Complaint ¶ 57) means that she cannot establish that the underlying prosecution was terminated in her favor, as she is required to do.  *See, Brown v. Sears Roebuck & Co.,* 297 A.D. 2d 205, 208 (1st Dept. 2002) [among other elements, a claim for malicious prosecution requires the Plaintiff to prove that there was a termination of the proceeding in favor of the accused].  An adjournment in contemplation of dismissal does not satisfy that element.  *Delgado v. City of New York,* 2021 U.S. Dist. LEXIS 113799 at **43-44 (S.D.N.Y., June 17, 2021); *see also, Fair v. Rochester,* 84 A.D. 2d 908 (4th Dept. 1981).

*allegations is immaterial to Plaintiff's claim against Mr. Bellavia.*  If Plaintiff believes that her claim is somehow enhanced by allegations that these two parties endured a contentious divorce, then Paragraph 18 adequately makes that assertion.   The remaining seventeen paragraphs, however, are irrelevant and prejudicial and should be stricken.

> It is a legal cliché that motions to strike under Rule 12(f) are "disfavored" because of their potential for pointless delay.  However, when the objectionable matter is plainly prejudicial to the moving party, thus lessening the possibility of a dilatory motive, there is no reason not to give Rule 12(f) full effect by striking the matter it is immaterial or scandalous.

*Strauss v. Gold,* 1984 U.S. Dist. LEXIS 17833 at \*\*2-3 (S.D.N.Y., April 6, 1984).  "Allegations may be stricken if they have no real bearing on the case [and] will likely prejudice the movant..." *G-I Holdings v. Baron & Budd,* 238 F. Supp. 2d 521, 555 (S.D.N.Y. 2002).  Such is the case here.

### B.   *Plaintiff's Gratuitous Inclusion of Paragraphs 11 through 17 and 19 through 28 Violates the Bellavia's Judgment of Divorce and Related Documents.*

Plaintiff's inclusion of the challenged paragraphs not only implicates Rule 12(f) of the Federal Rules of Civil Procedure, it also contravenes the Bellavia's Judgment of Divorce and related documents (copies of these documents are being submitted in connection with Mr. Bellavia's contemporaneous motion to seal).[2]   Because those documents are subject to confidentiality restrictions, her inclusion of the challenged paragraphs is improper; that is another reason why Mr. Bellavia's motion to strike should be granted.

---

[2] While it is true that "[m]atter outside the pleadings normally is not considered on a Rule 12(f) motion," *see,* Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1380 (3d Ed. 2004), "documents 'plaintiff either possessed or knew about and upon which they relied in bringing the suit' may be incorporated." *Kamholtz v. Yates County,* 2009 U.S. App. LEXIS 23788 at \*6 (2d Cir., October 29, 2009).  Plaintiff should not be heard to assail the outcome of the Bellavia's divorce proceeding and then object when the defendant asks the Court to review the dispositive documents from that proceeding which undermine the Plaintiff's contentions.  Plaintiff should have either elected not to include the challenged paragraphs in her complaint or filed them separately under seal.

## CONCLUSION

For the reasons set forth above, the Defendant, David Bellavia, respectfully requests that this Court grant his motion to dismiss the Plaintiff's Complaint as against him and grant his motion to strike from the filed Complaint paragraphs 11 through 17 and 19 through 28 of that pleading and, in turn, delete them from the record.

Dated: December 22, 2022  
Rochester, New York

**WOODS OVIATT GILMAN LLP**

By:    /s/ Donald W. O'Brien
       Donald W. O'Brien, Jr., Esq.
       *Attorneys for Defendant*
        *David Bellavia*
       1900 Bausch and Lomb Place
       Rochester, New York 14604
       585.987.2800
       dobrien@woodsoviatt.com

       William F. Savino, Esq.
       *Attorneys for Defendant*
        *David Bellavia*
       1900 Main Place Tower
       350 Main Street
       Buffalo, New York 14202
       wsavino@woodsoviatt.com

To:    Nathan McMurray, Esq.
      Advocates for Justice,
       Chartered Attorneys
      225 Broadway, Suite 225
      New York, New York 10007
      212.285.1400
      aschwartz@afjlaw.com

# EXHIBIT A

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
-------------------------------------------------------- X

DEANNA MARLENE BELLAVIA aka
DEANNA KING,

                              Plaintiff,

                v.

ORLEANS COUNTY, ORLEANS COUNTY
SHERIFF'S DEPARTMENT, ORLEANS
COUNTY DISTRICT ATTORNEY, COREY
BLACK, DEPUTY JOHN DOE, and DAVID
BELLAVIA,


                              Defendants.

-------------------------------------------------------- X

**COMPLAINT**

Civil Action No.  22-842


<u>Trial by Jury</u>

        Plaintiff DEANNA KING, by and through her attorneys, ADVOCATES

FOR JUSTICE, CHARTERED ATTORNEYS, as and for this Complaint, alleges

as follows:


## **PARTIES**

        1.      Plaintiff, DEANNA KING, is a resident of Batavia, New York in

Genesee County.

2.     Defendants, ORLEANS COUNTY, ORLEANS COUNTY SHERRIFF'S DEPARTMENT, and ORLEANS COUNTY DISTRICT ATTORNEY have an address of 14016 Route 31 West, Albion, New York,14411.

3.     Defendant COREY BLACK is an investigator from Defendant ORLEANS COUNTY DISTRICT ATTORNEY and a former deputy of Defendant ORLEANS COUNTY SHERIFF'S DEPARTMENT, and has a work address of 14016 Route 31 West, Albion, New York,14411.

4.     Defendant DEPUTY JOHN DOE is a deputy of Defendant ORLEANS COUNTY SHERIFF'S DEPARTMENT.

5.     Defendant DAVID BELLAVIA is a resident of Florida and is Plaintiff's former spouse.

## FACTS RELEVANT TO ALL CLAIMS

6.     Plaintiff is a well-known television and radio personality in the Rochester, New York area, with over 20 years-experience. She is the mother of three children. She resides in Batavia, New York.

7.     Defendant Bellavia is rightwing political provocateur and radio host. His work focuses on culture issues and political flash points, such as conspiracies regarding COVID vaccines.  He is most well-known, however, for receiving the Medal of Honor in 2019 from former President Donald Trump for heroics in Iraq. Separately, he is staunch Trump supporter, having worked on this campaign in 2016.

He parlayed notoriety from his association with Trump and known Trump associates including Michael Caputo and Carl Paladino into several lucrative contracts, book deals, and memberships on various boards. Bellavia is also known for several unsuccessful political campaigns. His radio show broadcasts in Buffalo, New York, and the surrounding areas, where his children reside, but he is a current resident of Naples Florida.

8.    Plaintiff and Defendant Bellavia were married in 1999.

9.    In the early years of their marriage, Plaintiff and Defendant Bellavia lived apart because Defendant Bellavia was stationed overseas. They had a young child, the parties had little money, and Plaintiff did not have a passport.

10.    During this time, Plaintiff wrote ink and paper love letters to Defendant Bellavia several times a week and often sent him care packages. The letters (some of which she has saved) included numerous recitations of the words "I love you" and "I miss you." Notably, Defendant Bellavia recognized Plaintiff's support in this first book, "House to House: An Epic Memoir of War."

11.    Despite Plaintiff's attempts to support, Defendant Bellavia had flashes of aggression and abuse, which became more common over time.

12.    Since the early days of their marriage, Defendant Bellavia consistently berated and verbally abused Plaintiff in person. He engaged in this abhorrent conduct through text messages once they acquired mobile phones. Over time this abuse

became increasingly more violent (throwing and breaking items and directing abuse

toward Plaintiff and their children).

13.    As examples, he called Plaintiff:

- "Ass hole,"
- "Cunt," (many times),
- "selfish bitch,"
- "lying cunt,"
- "disloyal worthless person,"
- "fucking idiot,"
- "ungrateful piece of shit,"
- "two-faced piece of shit,"
- "piece of shit,"
- "fucking scum bag,"
- "Fucking worthless,"
- "Fucking loser,"
- "evil fat troll,"
- "fucking tower of shame,"
- "bitch,"
- "fucking liar,"
- "raging cunt,"
- "lazy bitch,"
- "chubby whore,"
- "fucking moron,"
- "jealous fat cunt with chubby arms,"
- "fucking wannabe,"
- "loser,"
- "freeloading cunt,"
- "dirty dirty whore."

14.    Defendant repeatedly (in person, on video (documented), and through
texts messages) threatened Plaintiff with violence and wished her harm, for example:

- "I will fucking gouge your eyes out with a Philips head,"
- "I hope you die" (repeatedly) and "fuck off,"
- "I literally hope you fall and lose all your teeth,"
- telling her to buy rope and hang herself,
- "I would literally do anything for you to have a frontal lobe transplant,"

- "I hope you get herpes"
- And also threats that he could kill her and hide the evidence

15.    Defendant Bellavia repeatedly mocked Plaintiff's struggles with bulimia, depression, and mental health, and insulted Plaintiff's family calling them "white trash," "loser underachiev[ers]," "autistic and ugly," and similar insults.

16.    Defendant Bellavia also abused and insulted his own children, calling his sons "a lost cause," "fucking waste," "fucking moron," "fucking retard," "fucking idiot," "fucking serial killer," and stating "I can see her getting knocked up" about his 9-year-old daughter.

17.    Plaintiff would engage with Bellavia to defend herself and her children, especially in situations when her children would hide from Defendant Bellavia's violent outbursts.  Plaintiff's parents would also often intercede to ensure the safety of their daughter and grandchildren.

18.    From 2019 to 2021, Plaintiff and Defendant Bellavia were thus engaged in a very contentious divorce.

19.    During the divorce proceedings, Defendant Bellavia, continued his abusive behavior, and enlisted his friends and associates, including representatives of law enforcement and the US justice system, to harass and humiliate and discredit Plaintiff should she ever make evidence of their public in her defense.

20.     Plaintiff and Defendant Bellavia's divorce was before Judge Charles Zambito, who knew Mr. Bellavia personally and even endorsed him for his run for Congress 2012.

21.     Because of Mr. Bellavia's long-standing relationship with Judge Zambito, Plaintiff was distressed by the forum of her divorce, and feared that Judge Zambito would show preference toward Defendant Bellavia.

22.     Repeatedly, throughout the course of the divorce proceedings, Judge Zambito ignored evidence of domestic abuse and extreme harassment by Defendant Bellavia—even attempting to pressure Plaintiff to sign a non-disclosure agreement regarding the divorce proceedings—which she refused.

23.     For example, Plaintiff pleaded with Judge Zambito to stop Defendant Bellavia's limited visits with their children because they caused the children anxiety and fear during their interactions with their father.

24.     At one point during the proceedings, Defendant Bellavia visited the Plaintiff and told her in front of her children, "Cunt, you're going to have to sell your house." Plaintiff then said that a judge would never make her do that. Plaintiff recorded this and the recorded Defendant Bellavia's shrill response, "A judge? I got a judge! Bring it bitch!"

25.     Plaintiff then asked Defendant Bellavia if their judge was on Defendant Bellavia's "payroll." At that point, Defendant Bellavia noticed she was recording and smacked the phone out of her hand. He then left.

26.     Despite these incidents, like many of her other requests, Judge Zambito denied Plaintiff's request and allowed visits to continue.

27.     Thankfully, lawyers appointed on behalf of the children, intervened and asked the court to limit Defendant Bellavia's interaction with their two minor children.

28.     Also, because of Defendant Bellavia's continuing abuse and harassment of Plaintiff via text, and upon the recommendation of the children's legal representatives, the Court ordered Defendant Bellavia exclusively to use a parenting app ("App Close," which records all communications) to communicate with Plaintiff.

29.     On January 27, 2021, Defendant Investigator Corey Black, who is a right-wing political activist, lifelong friend of Defendant Bellavia, an investigator for the Orleans County District Attorney and a former Deputy of the Orleans Sheriff's Department, arrested Plaintiff without authority and without probable cause.

30.     In effecting the arrest, Defendant Investigator Black posed as a Sheriff's Deputy, with the consent of the Orleans County Sheriff's Department, and

conspired with Defendant Bellavia and Defendant John Doe to falsely arrest and imprison Ms. King, to discredit, humiliate, and otherwise continue the prosecution against her.

31.     Specifically, on January 26, 2021, Defendant Investigator Black called Plaintiff, falsely stated he was from Orleans County Sheriff's Department, and informed Plaintiff there was a warrant out for her arrest for harassment in Orleans County.

32.     Plaintiff does not live in and rarely travels to Orleans County.

33.     Orleans County, however, is the location of Defendant Bellavia's former childhood home and the current location of many of his friends and acquaintances, including Defendant Investigator Black.

34.     Plaintiff suspected the call was a prank, so she hung up and called the Defendant Orleans County Sheriff's Department directly asking if the call was "real."

35.     She also asked, "Is there a warrant out for me?"

36.     Defendant Orleans County Sheriff's Department refused to answer Plaintiff.

37.     Plaintiff was scared and confused.  She called her brother-in-law, an Undersheriff in Genesee County where she lives, and her brother-in-law confirmed that Defendant Investigator Black called the Genesee County Sheriff's Department

and asked if them to send a car to Plaintiff's house, arrest her, and transport her to Orleans County.

38.     Defendant Investigator Black agreed to allow Plaintiff to turn herself in the next day if her brother-in-law escorted her. Defendant Investigator Black claimed this was a "professional courtesy" to him.

39.     Hearing this, Plaintiff called Defendant Investigatory Black and asked for more information. He said that he could not explain the details, but he was offering her an opportunity to turn herself in voluntary because she is sister-in-law to a Genesee County Undersheriff.

40.     Plaintiff was alone with her minor children when Defendant Investigator Black asked police to come and arrest her. Panicked, she made arrangements to have her children looked after and made the long drive to Orleans County the next day, accompanied by her brother-in-law.

41.     Driving, she contemplated the long-term damage news of her arrest would cause to her children. She also contemplated the negative impact it could have on her career in entertainment and her general reputation.

42.     In Orleans County, Plaintiff was fingerprinted and forced to take a mug shot.

43.     She met with Defendant Investigator Black in a room in the Orleans County Public Safety Building.

44.    At this point, Plaintiff believed that Defendant Investigator Black was a Deputy from the Orleans County Sheriff's Department.

45.    Plaintiff asked why she was being arrested, and Defendant Investigator Black showed her a screen shot of Defendant Bellavia's phone log documenting a call from the couple's minor son regarding an issue with health insurance coverage, and a message on AppClose from Plaintiff requesting that Defendant Bellavia get a COVID test before the next visit with their children. It was the height of the pandemic, and Defendant Bellavia traveled nationally to large speaking engagements for his work.

46.    When Plaintiff expressed disbelief, Defendant Investigator Black cryptically and rather threateningly responded, "There's more to it than that, but David didn't want to pursue it."

47.    Defendant Investigator Black then confirmed that he and Defendant Bellavia are good friends.

48.    Plaintiff met alone with Defendant Investigator Black and her brother-in-law except for the brief period when Defendant Investigator Black read the charges against her. At that time, a Deputy, Defendant John Doe, entered the room. He did not say anything, and Plaintiff was never apprised of his name.

49.    Defendant Investigator Black knowingly engaged in the above conduct without probable cause for Plaintiff's arrest.

50.     Defendant Deputy John Doe engaged in the above conduct with the knowledge that Defendant Investigator Black is not a Sheriff's Deputy.

51.     Defendant Deputy John Doe knowingly engaged in the above conduct without probable cause for Plaintiff's arrest.

52.     Defendant Orleans County permitted Defendant Investigator Black and Defendant Deputy Doe to arrest Plaintiff without probable cause.

53.     Defendant Orleans County permitted Defendant Investigator Black and Defendant Deputy Doe to arrest Plaintiff at the instigation of Defendant Bellavia as a personal and/or political favor.

54.     Plaintiff, who had never broken a law in her life, then faced her arraignment before the court.

55.     When Plaintiff subsequently communicated with Defendant Bellavia, Defendant Bellavia knew details about her arrest including comments she made to Defendant Investigator Black when she appeared for arrest.

56.     In the months to come, Plaintiff was required to appear repeatedly in criminal court to address the charges against her.

57.     Intimidated and to avoid undue scrutiny and fearful again of possibly biased legal forum Plaintiff agreed to an Adjournment in Contemplation of Dismissal.

58.     The charges against Plaintiff have since been dismissed.

59.     To this day, she remains haunted by the experience, and fearful of Mr. Bellavia and the Orleans County Sheriff's Department.

60.     The divorce was finalized in December of 2021, and today Defendant Bellavia lives in Florida and has limited interaction with his children or Plaintiff.

### AS AND FOR A FIRST
### CAUSE OF ACTION
### (For Violation of the Fourth Amendment as against Defendants Orleans County, Orleans County Sheriff's Department, Orleans County District Attorney, Corey Black and Deputy John Doe)

61.     Plaintiff repeats and realleges each and every allegation contained in the paragraphs previously set forth.

62.     The policies and conduct of the defendants violated her right to be free of unreasonable searches and seizures in violation of the Fourth Amendment to the United States Constitution.

63.     As a direct and proximate result of the unlawful policies and acts of the defendants described herein, the plaintiff has incurred economic damage and damage to her reputation and still suffers both physical pain and suffering and psychiatric injury all to plaintiff's damage in an amount which exceeds the jurisdictional monetary threshold of the Court, the specific amount to be proven at trial, plus reasonable attorneys' fees, costs and disbursements.

64. The defendants acted willfully, maliciously and/or with reckless disregard of the consequences of their actions. Accordingly, plaintiff is entitled to an award of punitive damages.

## AS AND FOR A SECOND CAUSE OF ACTION

**(For Violation of the Fourteenth Amendment as against Defendants Orleans County, Orleans County Sheriff's Department, Orleans County District Attorney, Corey Black and Deputy John Doe)**

65. Plaintiff repeats and realleges each and every allegation contained in the paragraphs previously set forth.

66. The policies and intentional conduct of the defendants in furtherance of a personal and/or political vendetta deprived the plaintiff of her right to equal protection of the laws in violation of the Fourteenth Amendment to the United States Constitution.

67. As a direct and proximate result of the unlawful policies and acts of the defendants described herein, the plaintiff has incurred economic damage including a loss of gainful employment and damage to his reputation and still suffers both physical pain and suffering and psychiatric injury all to plaintiff's damage in an amount which exceeds the jurisdictional monetary threshold of the Court, the specific amount to be proven at trial, plus reasonable attorneys' fees, costs and disbursements.

68.    The defendants acted willfully, maliciously and/or with reckless disregard of the consequences of their actions. Accordingly, plaintiff is entitled to an award of punitive damages.

## AS AND FOR A THIRD
## CAUSE OF ACTION
**(For Malicious Prosecution as Against Defendants Corey Black and John Doe)**

69.    Plaintiff repeats and realleges each and every allegation contained in the paragraphs previously set forth.

70.    The conduct of the defendant Corey Black and John Doe constituted malicious prosecution because it was carried out in pursuit of a personal vendetta and without any basis in law or fact and without sufficient factual information.

71.    As a direct and proximate result of the unlawful acts of the defendants described herein, the plaintiff has incurred economic damage including a loss of gainful employment and damage to his reputation and still suffers both physical pain and suffering and psychiatric injury all to plaintiff's damage in an amount which exceeds the jurisdictional monetary threshold of the Court, the specific amount to be proven at trial, plus reasonable attorneys' fees, costs and disbursements.

72.     The defendants acted willfully, maliciously and/or with reckless disregard of the consequences of their actions. Accordingly, plaintiff is entitled to an award of punitive damages.

## AS AND FOR A FOURTH
## CAUSE OF ACTION
**(Conspiracy Under § as Against Defendants Corey Black, John Doe and David Bellavia)**

73.     Plaintiff repeats and realleges each and every allegation contained in the paragraphs previously set forth.

74.     The conduct of the defendants Corey Black, John Doe and David Bellavia constituted conspiracy to violate Plaintiff's constitutional rights because the aforenamed defendants agreed to act together to effectuate Plaintiff's arrest, in pursuit of a personal and/or political vendetta, to inflict Constitutional injuries upon Plaintiff, and by the overt act of knowingly causing her to be arrested and prosecuted without probable cause.

By acting as aforedescribed, Defendant has violated the Constitution.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that this Court enter judgment awarding Plaintiff:

a.      compensatory damages, jointly and severally, in an amount to be determined at trial;

b.      punitive damages against all individual defendants in an amount to be determined at trial that will deter such conduct by defendants in the future;

c.      pre-judgment and post-judgment interest and recovery of his costs, including reasonable attorneys' fees pursuant to 42 U.S.C. § 1988 for all 42 U.S.C. § 1983 claims; and

d.      attorneys' fees and cost; and

e.      such other relief as the Court finds equitable.

Dated:      New York, New York
            October 21, 2022

> ADVOCATES FOR JUSTICE,
> CHARTERED ATTORNEYS
> *Attorneys for Plaintiff*
>
> By:_____*Nathan McMurray*_____
>           Nathan McMurray
> 225 Broadway, Suite 225
> New York, New York 10007
> (212) 285-1400/917-923-8136
> Email: aschwartz@afjlaw.com