UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
DEANNA MARLENE BELLAVIA a/k/a
DEANNA KING,                                                                         Civil Action No. 22-842

                                              **Plaintiff,**

                                           v.

ORLEANS COUNTY, ORLEANS COUNTY
SHERIFF'S DEPARTMENT, ORLEANS
COUNTY DISTRICT ATTORNEY, COREY
BLACK, DEPUTY JOHN DOE, and DAVID
BELLAVIA,

                                            **Defendants.**
------------------------------------------------------------------X

## PLAINTIFF'S MEMORANBDUM OF LAW
## IN OPPOSITION TO MOTION TO DISMISS

## INTRODUCTION

**The facts, as pled, show demonstrate a plausible case that Defendant David Bellavia engaged in an illegal conspiracy with his longtime friend and state actor Defendant Corey Black to bring about the unlawful arrest of Plaintiff King and deny Plaintiff King of her rights.**

Plaintiff's complaint should not be dismissed because the facts (as plead) show plausible evidence of an agreement between Defendant Bellavia and Defendant/Investigator Corey Black to illegally arrest Plaintiff King and deprive her of her Constitutional Rights. In particular—applying the applicable legal standards outlined below—Plaintiff King has plead facts that when read "in a light most favorable" to Plaintiff King "plausibly" lead to a "reasonable expectation that discovery will reveal evidence" supporting her claim.

Plaintiff King has pled facts alleging that:

1. Defendant Black was more than Defendant Bellavia's friend or acquaintance—they had been involved for many years in the same rural-based, right-wing political circles for years in Western New York;

2. Under no normal circumstances—had Defendant Bellavia simply called the police—would his friend, Defendant Black—who worked not as a police officer but for the district attorney's office in a felony crimes unit related to illegal narcotics (in a county where neither Defendant Bellavia nor Plaintiff King lived)—respond to a misdemeanor harassment charge related to divorce proceedings;

3. Defendant Black, even after a cursory review of the communications between Plaintiff King and Defendant Bellavia (i.e., had he looked at Bellavia's phone), would have had no cause to arrest Plaintiff King; and

4. After Defendant Black's unlawful arrest of Plaintiff King, Defendant Bellavia continued to coordinate with Defendant Black to fulfill his long-established effort to silence, defame, and discredit Plaintiff King using the legal system.

These facts set out a plausible case that Plaintiff Bellavia engaged in a conspiracy with a state actor, Defendant Black, to deprive Plaintiff of her civil rights.

## **LEGAL STANDARDS TO BE APPLIED**

**1.  The Court must "construe all reasonable inferences . . . in a light most favorable" to Plaintiff King.**

On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court must look to the plaintiffs' operative complaint for the controlling facts, accept all factual allegations as true, and "construe all reasonable inferences that can be drawn from the complaint in the light most

favorable to the plaintiff." *Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 185 (2d Cir. 2012).

To survive a motion to dismiss, a plaintiff need only allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

This standard is not akin to a "probability requirement," but "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of [the claim]." Id at 556. "Because plausibility is a standard lower than probability, a given set of actions may well be subject to diverging interpretations, each of which is plausible." *Anderson News*, *supra*. The court cannot rely on any materials outside the operative complaint to "make a finding of fact that controvert[s] the plaintiff's own factual assertions." *Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 156 (2d Cir. 2006).

The review of such a motion is limited, and " '[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.' " *Villager Pond, Inc. v. Town of Darien,* 56 F.3d 375, 378 (2d Cir.1995)(quoting *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974)). Recovery may appear remote and unlikely on the face of the pleading, but that is not the test for dismissal. *Gant v. Wallingford Bd. of Educ.,* 69 F.3d 669, 673 (2d Cir.1995) (citing *Scheuer, supra,* 416 U.S. at 236).

Furthermore, the " 'standard is applied with even greater force where the plaintiff alleges civil rights violations....' " *Id.* (quoting *Hernandez v. Coughlin, 18 F.3d 133, 136 (2d Cir.), cert. denied, 513 U.S. 836, 115 S.Ct. 117, 130 L.Ed.2d 63 (1994).*); *Bernheim v. Litt*, 79 F.3d 318, 321 (2nd Cir. 1996)

**2.     To show conspiracy, Plaintiff King must simply make allegations showing that an agreement between a state actor (Corey Black) and a private party (David Bellavia) to deprive of her rights existed.**

The actions of private individuals are not deemed to be under color of state law unless those individuals are conspiring with state officials to deprive someone of their constitutional rights. See *Tower v. Glover*, 467 U.S. 914, 919-20 (1984). To state a claim against a private individual on a conspiracy theory, the private defendant must have allegedly acted in concert with the state actor to commit the unconstitutional act. Id. Ultimately, the question becomes whether the conduct that caused the constitutional violation can be "fairly attributable to the state." Id. To find a private actor liable under section 1983, a plaintiff must allege that he conspired with a state actor. *See Ciambriello v. Cty of Nassau*, 292 F.3d 307, 325-26 (2d Cir. 2002). Specifically, a plaintiff must allege "(1) an agreement between a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." Id.

## THE FACTS AS ALLEGED

The Complaint makes the following relevant allegations:

33.    As part of this pattern of harassment at Defendant Bellavia's instigations, on January 27, 2021, Defendant Investigator Corey Black, who is a right-wing political activist, lifelong friend of Defendant Bellavia, an investigator for the Orleans County District Attorney and a former Deputy of the Orleans Sheriff's Department, arrested Plaintiff without authority and without probable cause.

34.    In effecting the arrest, Defendant Investigator Black posed as a Sheriff's Deputy, with the consent of the Orleans County Sheriff's Department, and conspired with Defendant Bellavia and Defendant John Doe to falsely arrest and imprison Ms. King, to discredit, humiliate, and otherwise continue the prosecution against her.

35. Specifically, on January 26, 2021, Defendant Investigator Black called Plaintiff, falsely stated he was from Orleans County Sheriff's Department, and informed Plaintiff there was a warrant out for her arrest for harassment in Orleans County.

36. Plaintiff does not live in and rarely travels to Orleans County.

37. Orleans County, however, is the location of Defendant Bellavia's former childhood home and the current location of many of his friends and acquaintances, including Defendant Investigator Black.

38. Plaintiff suspected the call was a prank, so she hung up and called the Defendant Orleans County Sheriff's Department directly asking if the call was "real."

39. She also asked, "Is there a warrant out for me?"

40. Defendant Orleans County Sheriff's Department refused to answer Plaintiff.

41. Plaintiff was scared and confused. She called her brother-in-law, an Undersheriff in Genesee County where she lives, and her brother-in-law confirmed that Defendant Investigator Black called the Genesee County Sheriff's Department and asked if them to send a car to Plaintiff's house, arrest her, and transport her to Orleans County.

42. Defendant Investigator Black agreed to allow Plaintiff to turn herself in the next day if her brother-in-law escorted her. Defendant Investigator Black claimed this was a "professional courtesy" to him.

43. Hearing this, Plaintiff called Defendant Investigatory Black and asked for more information. He said that he could not explain the details, but he was offering her an opportunity to turn herself in voluntary because she is sister-in-law to a Genesee County Undersheriff.

44. Plaintiff was alone with her minor children when Defendant Investigator Black asked police to come and arrest her. Panicked, she made arrangements to have her children looked after and made the long drive to Orleans County the next day, accompanied by her brother-in-law.

45. Driving, she contemplated the long-term damage news of her arrest would cause to her children. She also contemplated the negative impact it could have on her career in entertainment and her general reputation.

46. In Orleans County, Plaintiff was fingerprinted and forced to take a mug shot.

47. She met with Defendant Investigator Black in a room in the Orleans County Public Safety Building.

48. At this point, Plaintiff believed that Defendant Investigator Black was a Deputy from the Orleans County Sheriff's Department.

49. Plaintiff asked why she was being arrested, and Defendant Investigator Black showed her a screen shot of Defendant Bellavia's phone log documenting a call from the couple's minor son regarding an issue with health insurance coverage, and a message on AppClose from Plaintiff requesting that Defendant Bellavia get a COVID test before the next visit with their children. It was the height of the pandemic, and Defendant Bellavia traveled nationally to large speaking engagements for his work.

50. When Plaintiff expressed disbelief, Defendant Investigator Black cryptically and rather threateningly responded, "There's more to it than that, but David didn't want to pursue it."

51. Defendant Investigator Black then confirmed that he and Defendant Bellavia are good friends.

52. Plaintiff met alone with Defendant Investigator Black and her brother-in-law except for the brief period when Defendant Investigator Black read the charges against her. At that time,

6

a Deputy, Defendant John Doe, entered the room. He did not say anything, and Plaintiff was never apprised of his name.

53. Defendant Investigator Black knowingly engaged in the above conduct without probable cause for Plaintiff's arrest.

54. Defendant Deputy John Doe engaged in the above conduct with the knowledge that Defendant Investigator Black is not a Sheriff's Deputy.

55. Defendant Deputy John Doe knowingly engaged in the above conduct without probable cause for Plaintiff's arrest.

56. Defendant Orleans County permitted Defendant Investigator Black and Defendant Deputy Doe to arrest Plaintiff without probable cause.

57. Defendant Orleans County permitted Defendant Investigator Black and Defendant Deputy Doe to arrest Plaintiff at the instigation of Defendant Bellavia as a personal and/or political favor.

58. Plaintiff, who had never broken a law in her life, then faced her arraignment before the court.

59. When Plaintiff subsequently communicated with Defendant Bellavia, Defendant Bellavia knew details about her arrest including comments she made to Defendant Investigator Black when she appeared for arrest.

## **ARGUMENT**

### **POINT I**

**DEFENDANT BLACK WAS ALLEGEDED IN THE COMPLAINT TO BE MORE THAN DEFENDANT BELLAVIA'S FRIEND—
THEY HAD BEEN INVOLVED IN THE SAME RURAL, RIGHT-WING POLITICAL CIRCLES FOR YEARS IN WESTERN NEW YORK.**

Plaintiff King's complaint states in paragraph 29, in part, "Defendant Investigator Corey Black … is a right-wing political activist, [and] lifelong friend of Defendant Bellavia." Defendant Bellavia argues that these facts—in particular that Defendant Black and Defendant Bellavia are longtime friends—is not enough to constitute a conspiracy. But Plaintiff alleges far more than that – enough to push the allegation into plausibility.

The two defendants' relationship shows several of the elements needed to show a plausible conspiracy between a state actor and a non-state actor, namely a relationship between the parties. Defendant Black and Defendant Bellavia are fellow travelers in the same political circles. They worked together on political campaigns; indeed, they worked at least in some concert on Defendant Bellavia's own political endeavors to run for Congress.

The whole circumstance of the arrest as described in the Complaint as hyper-unusual. An Investigator in the DA's office of one county, posing as a Sheriff in another county in order to make an arrest having nothing to do with his day-to-day work. Even if he had the authority to arrest Plaintiff King, at the very least, given the prior relationship between Defendant Bellavia and Defendant Black, and even if he was the only officer on duty withing a 50-mile radius (which he was not) it would have been appropriate and ethical for Defendant Black to have the arrest handled by an Orleans County officer. But given the non-existent evidence of unlawful harassment by Plaintiff King the complaint makes a plausible case that only Defendant Bellavia's good friend – and co-conspirator, Detective Black, would be willing to pull off the farce. This is where Defendant

Bellavia's pre-existing relationship with Defendant Black matters, especially within the context of the other relevant plead facts outlined in more detail in the Complaint.

### POINT II

**UNDER NO NORMAL CIRCUMSTANCES—HAD DEFENDANT BELLAVIA SIMPLY CALLED THE POLICE—WOULD HIS FRIEND, DEFENDANT BLACK, WHO WORKED NOT AS A POLICE OFFICER BUT FOR THE DISTRICT ATTORNEY'S OFFICE IN A FELONY CRIMES UNIT RELATED TO ILLEGAL NARCOTICS (IN A COUNTY WHERE NEITHER DEFENDANT BELLAVIA NOR PLAINTIFF KING LIVED), RESPOND TO A MISDEMEANOR HARASSMENT CHARGE RELATED TO DIVORCE PROCEEDINGS.**

Defendant Bellavia, "does not deny that he was the complainant in the underlying criminal case" that is the subject of this matter. He called the police. He did not call 911. He did not call the sheriff's office He sought to press charges in a county where he did not reside and where Plaintiff King did not reside. And, according to the complaint a member of a high-level a drug task force in the District Attorney's Office in another county, who was not a police officer, responded and drove Plaintiff to be arrested in that other county. The DA's employee in this odd arrest just happened to be a friend and associate of Defendant Bellavia.

As stated in Plaintiff Kings complaint, Defendant Bellavia lives in Florida. Plaintiff King lives in Genesee County. Further, Plaintiff King rarely travels to Orleans County. More importantly, as stated repeatedly for emphasis, Defendant Black is an investigator for the Orleans County District Attorney's office. He is assigned to the Major Felonies Task Force. According to the Orleans County District Attorney's website, the purpose the Orleans County Major Felony Crime Task Force is to, "combat the increasingly complex and disruptive issues of drug abuse, trafficking related violence and major felonious crimes within society." Nothing in that description says anything about handling a misdemeanor harassment claims—based on nothing more than an unsubstantiated allegation of harassment—between a divorcing couple.

Indeed, Plaintiff King assumed Defendant Black was a member of the Orleans County Sheriff's department (see paragraph 44 of her complaint) because he told her that he was. Defendant Black sat beside and questioned Plaintiff King alongside members of the Orleans County Sheriff's Department (see paragraph 44). At no time did Defendant Black explain to Plaintiff King that he in fact worked for the District Attorney in the Orleans County Major Felonies Task Force. To the contrary, Defendant Black identified himself to Plaintiff King on multiple occasions (calls and in person) as an Orleans County Sheriff Deputy. The only reason we know that he did not and does not hold such a title or position is because of Plaintiff King's efforts following her unlawful arrest to research his actual role in Orleans County. On his own LinkedIn page, Defendant Black clearly states that he is a "former" sheriff's deputy. Further, according to his own self-created profile, he has not worked for the Orleans County Sheriff's Department since 2014, nearly seven years.

These allegations create a plausible case that Defendant Black acted in concert and at the behest of his friend, Defendant Bellavia, sufficient to withstand a motion to dismiss.

## POINT III

**DEFENDANT BLACK, EVEN AFTER A CURSORY REVIEW OF THE COMMUNICATIONS BETWEEN PLAINTIFF KING AND DEFENDANT BELLAVIA (I.E., IF HE LOOKED AT BELLAVIA'S PHONE) WOULD HAVE HAD NO CAUSE TO ARREST PLAINTIFF KING.**

The only two incidents cited by Defendant Black for Plaintiff King's arrest were related to events on January 5 and January 7. On January 5, Plaintiff King asked Defendant Bellavia for medical insurance information. On January 7, Plaintiff King requested that Defendant Bellavia receive a COVID-19 test before the visiting their children (see paragraph 45 of Plaintiff King's complaint). Neither of these communications do not in any way create a factual predicate for a harassment charge.

Both requests were related to the health and well-being of Plaintiff King's and Defendant Bellavia's children—issues directly related to the purpose of the parenting application Plaintiff King and Defendant Bellavia used to communicate. She needed insurance information so their child could receive care. She made the request for vaccination because Plaintiff King was similarly concerned about her children's health. Defendant Bellavia was using his radio show to openly decry the COVID-19 vaccine and COVID-19 prevention procedures enacted by public health officials. And he was traveling the country, frequently, at the peak of the pandemic. Therefore, Plaintiff King's request that Defendant Bellavia get tested was far from harassment. She was justifiably worried that her children or herself might get sick. Please note, Plaintiff King's children did not yet qualify for vaccination and were unvaccinated.

Had Defendant Black even briefly viewed Defendant Bellavia's phone, he would have likely concluded that Defendant Bellavia (not Plaintiff King) was the harasser. As stated in Plaintiff King's complaint, Defendant Bellavia "engaged in abhorrent conduct through text messages." This abhorrent conduct escalated in the weeks preceding Defendant Black's unlawful arrest of Plaintiff King. Plaintiff King intends to show, though discovery, the full extent of Defendant Bellavia's unlawful behavior, including already referenced texts and calls in which Defendant Bellavia openly threatened Plaintiff King with statements such as "You are going to get in trouble" and calls stating, "I'm going to lock you up." And, voila, the task was taken care of by Defendant/fried Black. Given the abusive language used by Defendant Bellavia, towards Plaintiff King at this time (see paragraphs 13-15 or her complaint for examples), a Detective who was not acting as a friend would have concluded that Defendant Bellavia and not Plaintiff, was the aggressor.

Again, as cited in Plaintiff King's complaint (see paragraphs 27-28) the courts were not critical of Plaintiff King's behavior in January 2022 when Defendant Black unlawfully arrested Plaintiff King. They were critical of Defendant Bellavia. The court appointed attorney for the children, Jake Whiting, asked honorable Charles Zambito to prevent Defendant Bellavia from seeing the children on his own without supervision because the children felt harassed themselves by Defendant Bellavia—not Plaintiff King. The court granted Plaintiff's request on January 29, 2021, ordering that Defendant Bellavia's "… visitation with the parties' children [be]hereby immediately terminated and [that]all writing or verbal contact between Plaintiff and the children …be supervised or in a therapeutic setting." Only a friend and co-conspirator, an investigator in a major felonies unit, would have concluded that Plaintiff was a harasser who needed to be dragged to another county and arrested.

### POINT IV

### AFTER DEFENDANT BLACK'S UNLAWFUL ARREST OF PLAINTIFF KING, DEFENDANT BELLAVIA CONTINUED TO COORDINATE WITH DEFENDANT BLACK TO FULFILL HIS LONG-ESTABLISHED EFFORTS TO SILENCE, DEFAME, AND DISCREDIT PLAINTIFF KING USING THE LEGAL SYSTEM

Defendant Bellavia spent years trying to silence, intimidate, and discredit Plaintiff King using the legal system as his primary tool. Paragraph 19 of Plaintiff King's complaint states, "During the divorce proceedings, Defendant Bellavia, continued his abusive behavior, and enlisted his friends and associates, including representatives of law enforcement and the US justice system, to harass and humiliate and discredit Plaintiff . . ." Further, Paragraph 22 of Plaintiff King's complaint states, that during their divorce proceedings Plaintiff King was pressured to sign a non-disclosure agreement."

Starting on December 10, 2020, Defendant Bellavia filed an order of protection attempting to silence Plaintiff King's free speech. This order of protection was not granted by the divorce court Judge Charles Zambito. Defendant Bellavia continued, however, to threaten Plaintiff King so that she would remain silent, which culminated with his call to Defendant Black (again, Defendant Bellavia's friend, who works not as a police officer, but as an out of county investigator for a drug task force and major crimes unit within a district attorney's office in Orleans County).

Plaintiff King's arrest in Orleans County meant that the protective order denied by Judge Zambito would be issued (in effect) by Orleans County—which is exactly what happened on the day of Plaintiff King's arraignment on January 27, 2021, when she was ordered by the court to not speak of or contact Defendant Bellavia. That court order lasted until Plaintiff King agreed to the Adjournment in Contemplation of Dismissal to resolve the bogus charges against her to avoid further humiliation in Orleans County.

Further, immediately following Defendant Black's unlawful arrest of Plaintiff King, Defendant Bellavia used the arrest to make another attempt to petition the courts to silence, intimidate, and discredit Plaintiff King. Indeed, this was the purpose of his conspiracy with Defendant Black to unlawfully arrest Plaintiff King. He knew (an even threatened) that evidence of an arrest (even on such thin grounds) could be used against Plaintiff King to silence, intimidate, and discredit her. Thus, on February 2, 2021 (less than a week after her arrest) Defendant Bellavia filed a 19-page affidavit to Judge Charles Zambito again asking him to silence Plaintiff King's free speech. In that affidavit, Defendant Bellavia continues to demonstrate the behavior shown in our filings. He openly lies about Plaintiff King's arrest, using alleged facts that he somehow obtained from Defendant Black, to silence, intimidate, and discredit Plaintiff King.

Specifically, in his February 2, 2021 affidavit from Florida (not Orleans County) Defendant Bellavia states that Plaintiff King was screaming and ranting in front of their children at time of her arrest—none of which is true, because Plaintiff King turned herself in after she drove to Orleans County with her brother-in-law, the Undersheriff in Genesee County where she lives. Thus, the children did not witness her arrest. Further, Bellavia states that Plaintiff King was so "unhinged" that, when in detention in Orleans County she "threatened police officers, told staff and law enforcement that she would ruin her careers, and bring in the media." In his affidavit, he claims that he obtained these facts from Defendant Black—which indicates that they were in continued communications regarding the arrest and how to craft a narrative around it.

Defendant Bellavia also mockingly refers to Plaintiff King as performing the, "… repertory theatre production of a battered woman." Further, he states that her own criminal attorney, her undersheriff brother-in-law, and the Plaintiff King herself all apologized for Plaintiff King's allegedly outrageous and "unprofessional behavior" The affidavit (like so many other legal maneuvers by Defendant Bellavia) was simply part of his efforts to silence, intimidate, and defame Plaintiff King. Again, none of this is true, and will and has been disputed by testimony in court. For example, in a recorded hearing to oppose Defendant Bellavia's February 5, 2021, affidavit to silence Plaintiff King, Plaintiff Kings divorce attorney, Allison Bates, testifies that she spoke to the Orleans County District Attorney (Joseph Cardone). Plaintiff Bates testifies that Defendant Cardone told her that there was "absolutely no issue" with Plaintiff King, and that Plaintiff King was "professional and courteous."

Please note, Defendant Bellavia's substantial and wide-reaching efforts to silence, intimidate, and discredit Plaintiff King using the courts and legal system continue even today. On January 12, 2023, Defendant Bellavia brought a separate action in Genesee County asking the

14

court to, among other requests, permanently "grant an order of restraint preventing the defendant from posting on the world wide web under her name Deanna King or "Cynical Mother" her handle on Twitter, Facebook, or Instagram and any other social media platform" disparaging him. Defendant Bellavia even extends his requests for silence and protection to counsel for plaintiff in this case.

As of this date, despite his many efforts, Defendant Bellavia has not been entirely successful silencing Plaintiff King's free speech and First Amendment rights. As noted in previous filings, when Plaintiff King continued to refuse to sign a non-disclosure agreement at the time of her divorce, Defendant Bellavia's divorce attorney, Joan Adams, asked the court to issue a broad protective order to silence Plaintiff King. The order, as first presented to the court, would have amounted to an almost complete restriction on Plaintiff King's First Amendment rights—similar to what he is asking for again now in Genesee County. Refusing to be silenced, Plaintiff King hired an attorney and objected to Defendant Bellavia's motion. Honorable Charles Zambito eventually issued a limited order, which recognized Plaintiff King's First Amendment Rights, stating, stating (in part), the court's discretion in fashioning a protective order is not unlimited, particularly where a party's First Amendment Rights are implicated.

The effort to get this lawsuit dismissed, and to strike the pleadings from the public record, is but another effort by Defendant Bellavia to continue his efforts to shut Plaintiff up.

## **CONCLUSION**

Ending this court proceeding against Defendant Bellavia, by dismissing Plaintiff King's claims would add to the injustice Plaintiff has already endured because of Defendant Bellavia's efforts to manipulate the court and legal system. Indeed, Defendant Bellavia's efforts to end this matter, at this early stage, would allow him to avoid the discovery process, which would plausibly

lead to evidence supporting Plaintiff King's claims. We work within a system or notice pleadings, i.e., pleadings that notify the parties of the general issue in dispute. Plaintiff King has plead facts (cited herein) that are more than thread bare accusations. She has presented a detailed narrative in her complaint, with dates claims, that would—when taken in a light most favorable to Plaintiff King—the standard required by law—plausibly establish the elements of necessary to show a conspiracy between Plaintiff Bellavia and Defendant Black to silence, intimidate, and discredit Plaintiff King via false arrest.

We thus respectfully ask this court to deny Defendant Bellavia's Motion to Dismiss, and to allow Defendant King her day in court to seek justice for the damage caused to her.

Dated: Buffalo, New York
        January 17, 2023

                                        ADVOCATES FOR JUSTICE,
                                      CHARTERED ATTORNEYS
                                      Attorneys for Plaintiff

                                      By: /s/ *Nathan D. McMurray*
                                          Nathan D. McMurray
                                          Arthur Z. Schwartz
                                          225 Broadway, Suite 1902
                                          New York, New York 10007
                                          (212) 285-1400
                                          nmcmurray@advocatesny.com