```
 1                .     UNITED STATES DISTRICT COURT

 2                      WESTERN DISTRICT OF NEW YORK

 3
        - - - - - - - - - - - - - X        22-CV-0842
 4      DEANNA MARLENE BELLAVIA,
                    Plaintiff
 5
                Vs.                        Buffalo, New York
 6      ORLEANS COUNTY ET AL,              January 24, 2023
                    Defendant
 7      - - - - - - - - - - - - - X

 8
                      TRANSCRIPT OF ORAL ARGUMENT
 9              BEFORE THE HONORABLE JEREMIAH J. MCCARTHY
                      UNITED STATES DISTRICT JUDGE
10

11                    ADVOCATES FOR JUSTICE
                      BY: NATHAN DOUGLAS MCMURRAY, ESQ.
12                    225 Broadway.
                      Suite 1902
13                    New York, New York 10007
                      Appearing on behalf of the Plaintiff
14

15                    WEBSTER SZANYI LLP
                      BY: SHANNON BRAE O'NEILL, ESQ.
16                    424 Main Street
                      Suite 1400
17                    Buffalo, New York 14202
                      Appearing on behalf of the County
18

19                    WOODS OVIATT GILMAN LLP.
                      BY: DONALD W. O'BRIEN, JR., ESQ.
20                       WILLIAM E. SAVINO, ESQ.
                      1900 Bausch & Lomb Place.
21                    Rochester, New York 14604.
                      Appearing on behalf of the Defendant
22

23
                      COURT REPORTER:Brandi A. Wilkins
24                    scalisba@gmail.com
                      Kenneth B. Keating Federal Building
25                    100 State Street, Room 2120
                      Rochester, New York 14614
```

```
 1              THE CLERK:  All rise.

 2              THE COURT:  Morning.

 3              MR. MCMURRAY:  Morning.

 4              THE COURT:  Please be seated.

 5              THE CLERK:  We're on the record in civil

 6    proceeding 22-CV-842 Bellavia V Orleans County et al.

 7    For oral argument regarding defendant's motion to

 8    dismiss.  Present in the courtroom are Nathan McMurray

 9    for plaintiff.  Shannon O'Neill for the county

10    defendants, Donald O'Brien Jr. And William Savino for

11    defendant Bellavia.  The Honorable Jeremiah J.

12    McCarthy presiding.

13              THE COURT:  Good morning, again, everyone.

14    Ms. O'Neill, I know you just appeared on behalf of the

15    county defendants; is that right?

16              MS. O'NEILL:  Yes, Your Honor.  I'm here

17    just as a bystander for right now.

18              THE COURT:  Right.

19              MS. O'NEILL:  We have an extension.

20              THE COURT:  Understood.  Understood.  Um,

21    all right.  I have um defendant David Bellavia's

22    motion to dismiss the original complaint.  As you

23    know, Mr. McMurray filed early this morning a motion

24    to amend the complaint.  Um, I'm going to focus on the

25    original complaint today, and what I'm going to
```

1    discuss with you the amended proposed amended

2    complaint as well and we'll see where we go.

3            Um, let me ask preliminarily to everybody.

4    Um, I sent an email several weeks ago asking for a

5    copy of the criminal complaint.  Nobody sent it to me.

6    Um, so I still don't know exactly what the criminal

7    charges against -- I'm going to refer to Ms. King, is

8    that the name she goes by?

9            MR. MCMURRAY:  Ms. King, yes.

10           THE COURT:  Because otherwise we have two

11   Bellavias and it gets confusing, so I'll refer to her

12   as Ms. King.  Now, in your proposed amended complaint

13   you I guess indicate that although I don't think you

14   directly say it that the charge was second degree

15   harassment, but I mean, does anybody -- I still don't

16   know what the -- what the charge was.

17           MS. O'NEILL:  Your Honor, if I could have a

18   moment to be heard briefly.  That's part of the reason

19   why I was here is that --

20           THE CLERK:  Can you please approach the

21   microphone?

22           MS. O'NEILL:  I apologize.

23           THE COURT:  Yeah.  Why don't you sit there?

24           MS. O'NEILL:  Sure.  I was going to sit back

25   there just because I wasn't actually appearing.

1            THE COURT:  That's all right.

2            MS. O'NEILL:  Part of the reason I wanted to

3    be here, Your Honor, is with respect to the criminal

4    matter.  The criminal matter it's our understanding

5    from the county's position is that it was sealed

6    pursuant to criminal procedural law 160.1.  I

7    circulated a stipulation to plaintiff's counsel as

8    well as to co-defendants with the stipulation to

9    unseal the criminal matter so that the -- obviously

10   with the civil matter being directly related to the

11   criminal matter, it waives any protections pursuant to

12   160.  The stipulation was something I've used in other

13   cases.  I sent it to plaintiff's attorney.  He has yet

14   to sign that.  I brought it with me today in hopes

15   that maybe that could be resolved as well, but that's

16   likely why the criminal complaint has not been

17   provided to Your Honor because of the sealing order

18   that's currently in place.

19           THE COURT:  Well, thank you for that.  It

20   would have been nice if somebody had given me that

21   explanation previously.

22           MR. SAVINO:  We agreed to sign stipulation

23   unsealing the records, and um, I so advised Ms.

24   O'Neill.

25           THE COURT:  Okay.  Um, Mr. McMurray, what's

1    your position on that?

2          MR. MCMURRAY:  Well, we asked to see what's

3    in it, and at this time, we don't know what's in it

4    either but if it's going to be --

5          THE COURT:  Well, wait a second.  You don't

6    know what's in the criminal complaint?

7          MR. MCMURRAY:  I only have what my client

8    has given me.  I have not seen what's in the total

9    complaint, so we do not have it.

10          THE COURT:  But your allegation both in the

11    original complaint and in the proposed amended

12    complaint is that she was arrested and maliciously

13    prosecuted without probable cause, and I certainly

14    would need to know what the elements of the crime were

15    that she was charged with.

16          MR. MCMURRAY:  I agree, Your Honor.  So I

17    was -- we were being cautious because I wanted to know

18    the full scope of what's in it because of --

19          THE COURT:  The full scope of what's in

20    what?

21          MR. MCMURRAY:  The allegations against her

22    in the complaint.  So I simply ask can I see what's in

23    it.  I don't know what's in your documents either.

24    I'm not sure what they're totally unsealing, and I

25    apologize if that's confusing to you but it has to be

1    unsealed.

2              THE COURT:  Well, how can you -- consistent

3    with Rule 11 how can you make an allegation that there

4    was not probable cause for her arrest or for her

5    prosecution if you don't even know what the underlying

6    charges were?

7              MR. MCMURRAY:  Your Honor, because she

8    didn't do anything.  And --

9              THE COURT:  She didn't do what though?  I

10   mean, that's the issue.  What was she charged with?

11   Was there probable cause with what she -- for what she

12   was charged with?  Because you're -- your only

13   allegation against David Bellavia is that he conspired

14   with the other defendants to effectuate her wrongful

15   arrest and malicious prosecution, and probable cause

16   is an element of both of those claims.

17             So it seems to me that we all need to know

18   what the -- what the specific charge was and then

19   address the elements to see if there was probable

20   cause, and I think that's true even at the pleading

21   stage.  Let me -- counsel, you want to weigh in on

22   this?

23             MR. O'BRIEN:  Your Honor, as soon as you

24   made your request, it was not long after that that we

25   were advised by Ms. O'Neill that she had circulated a

1    stipulation to release the sealed file on this

2    criminal -- underlying criminal case, so I apologize.

3    That's why I probably should have indicated to you

4    that it had been filed under sealed and that we were

5    waiting for that process to complete.  Um, but, um, I

6    think that one of the failings of the complaint is

7    that it really doesn't say anything about the

8    underlying arrest other than it was wrong, um, and I

9    agree with you that we need to get that file in front

10   of you.

11           THE COURT:  The original complaint says --

12   and again, because this is a 12B6 motion I'm only

13   talking about pleading, but pleading has to be in a

14   non conclusory fashion, and the complaint -- the filed

15   complaint not the proposed amended complaint just

16   makes reference in a couple places to harassment while

17   under the penal law there's like five different

18   versions of harassment each of which contains

19   different elements.

20           Now, in the proposed amended complaint, Mr.

21   McMurray, you allude to second degree harassment, but

22   that also has a number of elements to it, and I looked

23   up the penal law in second degree harassment.  That's

24   a violation.  It's not a misdemeanor, but you make

25   reference in the proposed second amended complaint to

1    a misdemeanor.  So I still don't know what we are

2    talking about.

3           MR. MCMURRAY:  Your Honor, I do not object

4    to unsealing it.  We filed our original complaint

5    based on the documentation that Ms. Bellavia had in

6    her possession.  And I apologize if we were overly

7    cautious because of the nature of the -- of our

8    complaint we feel we don't exactly trust the people

9    that arrested her and we were -- she is a public

10   figure and I was are worried about --

11          THE COURT:  As is he.

12          MR. MCMURRAY:  Correct.

13          THE COURT:  And the only thing that's quite,

14   quite, quite obvious to me is that these two people do

15   not like each other.  I get that.

16          MR. O'BRIEN:  So stipulated.

17          THE COURT:  But -- and I got to say, um, I

18   alluded to it in my decision on the motion to strike

19   which I denied but I am troubled.  Maybe it's not my

20   concern, but I'm troubled by the level of detail that

21   went into this vis-à-vis the non disparagement

22   provisions of the divorce documents.  Um, that's -- I

23   don't think that's my battle, but it -- it kind of

24   jumps out at me and on both sides.  Okay?  Not just

25   one side to the other.

1          As I said, these people obviously don't like
2   each other.  I think they're hopefully both better off
3   being divorced um, but all right.  I've said my peace.
4   Why don't we go back to argument?  It's your motion,
5   Mr. O'Brien.  I'll hear from you and then Mr.
6   McMurray, I'll hear from you.
7          MR. O'BRIEN:  Your Honor, let me just say
8   I'm somewhat at a disadvantage.  I have not had time
9   to read the motion that was filed early this morning.
10         THE COURT:  Yeah.  Well, it was filed at
11   like ten to three this morning.
12         MR. O'BRIEN:  Yeah.  I got in my car and
13   drove from Canandaigua to Buffalo.
14         THE COURT:  Again, I'm not expecting you to
15   be conversing with it.  I've read it, but it -- I'll
16   just tell you it -- likewise, it seems to narrow the
17   charges down to second degree harassment, but maybe it
18   does, maybe it doesn't because now we -- I guess it's
19   stipulated nobody knows exactly what the charges were.
20   Well, I guess your client would know because he signed
21   the criminal complaint, right?
22         MR. O'BRIEN:  He signed the --
23         THE COURT:  And you say you are not at
24   liberty to address that now because it's sealed.
25         MR. O'BRIEN:  Well, I know that you have

1    noted some equivalency to be fair between the two

2    parties here, but we have not disclosed anything

3    except under sealed that was part of the divorce

4    proceeding.

5           THE COURT:  Yeah.  Well, I mean, Ms. King

6    claims that Mr. Bellavia's book which I have not read,

7    I've seen a couple of the excerpts, is disparaging of

8    her.  So what's good for the goose is good for the

9    gander.  I don't know.

10          MR. O'BRIEN:  Well, we have not used this

11   form for any kind of disclosures --

12          THE COURT:  Right.

13          MR. O'BRIEN:  -- that I think one might

14   argue violates the non disparagement of the divorce

15   decree.  That said, um, I do think today's objective

16   should be to deal with the original complaint because

17   I'm not even had an opportunity to look at the motion

18   and the proposed amended complaint in any way.  All I

19   will say is that um -- in that regard is if you look

20   at um the decision from your colleague Judge Foschio

21   from a few months ago in a case called (inaudible) V

22   City of Buffalo.

23          THE COURT:  Did you cite that?

24          MR. O'BRIEN:  It's --

25          THE COURT:  No.  Did you cite it in your

1    papers?

2              MR. O'BRIEN:  I did not, Judge, because I

3    didn't know there was going to be an amended complaint

4    until yesterday when I got --

5              THE COURT:  Oh, okay.

6              MR. O'BRIEN:  -- the letter from --

7              THE COURT:  Well, when you say that there's

8    going to be an amended complaint, maybe there will be,

9    maybe there won't be.  There's a motion to amend.

10             MR. O'BRIEN:  That's correct, and I'll save

11   my argument against that for the --

12             THE COURT:  Well, now you got my curiosity

13   up.

14             MR. O'BRIEN:  Okay.

15             THE COURT:  So what did he say?  He's a good

16   judge, you know.

17             MR. O'BRIEN:  Um.

18             THE COURT:  And would somebody tell him

19   that.

20             MR. O'BRIEN:  Anyway, Judge, um, I'm sure

21   you're familiar with the well established standard

22   that should not be granted where it would be a

23   futility.

24             THE COURT:  Yeah, I understand that.

25             MR. O'BRIEN:  Okay.

```
 1              THE COURT:  And it may or may not be futile.
 2    Right now, none of us know the underlying charge was.
 3              MR. O'BRIEN:  Right.
 4              THE COURT:  Well, you know it and you can't
 5    talk about it, and Mr. McMurray doesn't know.
 6              MR. O'BRIEN:  But what Judge Foschio said in
 7    the (inaudible) case was 22 US District Lexus 94 200
 8    is that where the responses in the opposing dismissal
 9    are devoid of any indicia that the pleading
10    substantive deficiencies may not feasibly be overcome
11    dismissal with prejudice is supported.  In other
12    words, you look at what the opposition was to the
13    motion to dismiss the initial complaint, and if that
14    opposition does not provide a reasonable basis for
15    assuming that the complaint could be brought up to
16    snuff under the pleading standards, then leave to
17    replead should not be granted, and looking at the
18    papers in opposition submitted by Mr. McMurray which
19    essentially just augmented the allegations in the
20    complaint that we sought to um strike which
21    essentially are devoid to all of the terrible things
22    that my client purportedly said leading up to the
23    divorce decree, um, they still don't and would not
24    satisfy the standards required under (inaudible) for a
25    1983 complaint, so my position would be um that you
```

1    need to look at what they put up in their opposition,

2    and if that does not sufficiently get the complaint

3    past the finish line, then you can deny leave to

4    replead but that was based only on what was a letter

5    yesterday indicating that later yesterday we would be

6    getting a motion for leave to amend.  So when I look

7    at that, I will have to address it.

8            But insofar as the motion to dismiss the

9    initial complaint, I won't (inaudible) here, Judge.  I

10   think that um it really is just the question of

11   looking at the complaint and seeing whether it passes

12   muster and really nothing that I can say is going to

13   make it better or worse.  All I can say is that I

14   thought we had identified the only allegations in the

15   complaint that could reasonably be construed to

16   support the conspiracy charge other than the

17   allegations that we sought to strike which really

18   relate to the parties tumultuous end of their

19   marriage, but if you look at Paragraphs 29, 30, 53 and

20   74, they are really the conclusory type of allegations

21   that the courts have extrude in many, many decisions

22   some of which were cited in our original brief and in

23   our reply brief.

24           If you look at two of the allegations,

25   Paragraph 29 and 47, they allude to Mr. Bellavia's

1    friendship with Mr. Black, and as we pointed out on

2    our initial memorandum of law the fact that the

3    arresting officer or other members of law enforcement

4    may have friendships with the complainant does not

5    serve to support a conspiracy charge under Section

6    1983 against the private or non state actor.  And then

7    with respect to the allegations that suggest that

8    there was some ongoing contact between Mr. Black and

9    Mr. Bellavia, we cited cases in our initial brief in

10   the proportion that that is the kind of routine

11   contact that is to be expected to be in a criminal

12   prosecution, and therefore, that in and of itself does

13   not support a conspiracy claim against a private or

14   non state actor under 42 USC Section 1983.

15          So I really don't have anymore to add,

16   Judge, than what's in my memorandum of law that we

17   submitted initially in support of the motion and in

18   the reply memorandum of law because I believe that the

19   complaint is willfully inadequate and does not meet

20   the standards particularly given the applicable law.

21   So unless you have any questions.

22          THE COURT:  Well, I -- now, she alleges that

23   she lives in Batavia which is in Genesee County;

24   right?

25          MR. MCMURRAY:  Correct.

```
 1              THE COURT:  And that she had never been
 2    to -- which county were the charges alleged in?
 3              MR. MCMURRAY:  Your Honor --
 4              THE COURT:  Orleans County?
 5              MR. O'BRIEN:  Yes.
 6              MR. MCMURRAY:  If I may.
 7              THE COURT:  And that she had never been to
 8    Orleans County for anything relative to this, so why
 9    would charges be lodged in Orleans County?  Or is this
10    something you can't discuss until we get the complaint
11    unsealed?
12              MR. O'BRIEN:  No, Your Honor.  I -- I think
13    that that -- those questions would be better reserved
14    for um the municipal defendants when and if the issues
15    are drawn.
16              THE COURT:  Well, but the conspiracy charge
17    relates to Mr. Bellavia which also then ties in the
18    underlying -- I mean, the conspiracy as alleged
19    whether conclusory or not is that they -- Bellavia
20    conspired with the others to effectuate her wrongful
21    arrest and her malicious prosecution, and one of the
22    issues that strikes me as a little curious in that
23    regard is if she didn't do anything in Orleans County
24    then why were charges lodged there?  Mr. Savino, you
25    look like you anxiously want to --
```

1          MR. SAVINO:  That's his county of residence
2     so it's very natural it be in Orleans County.
3          THE COURT:  But doesn't she have -- I'm not
4     really familiar with state criminal procedure.
5          MR. SAVINO:  Neither am I.
6          THE COURT:  After 16 years, I'm still
7     learning my way around federal criminal procedure, but
8     why would -- why would -- doesn't the -- doesn't --
9     don't the wrongful acts have to have occurred in the
10    county?
11         MR. O'BRIEN:  Your Honor, I -- all I can say
12    is --
13         THE COURT:  All right.  I'm going to make a
14    record.  Savino is now saying there is something he
15    doesn't know.
16         MR. SAVINO:  I stipulate that I don't know.
17         THE COURT:  All right.  Well, that's one --
18    go ahead.
19         MR. O'BRIEN:  Judge, you have to -- as with
20    any of the allegations in the complaint, you have to
21    accept them as true for purposes of determining a Rule
22    12 B6 motion.
23         THE COURT:  Yeah.
24         MR. O'BRIEN:  So I didn't see any reason to
25    try and disprove that allegation or any of the other

1    allegations in the complaint.

2              THE COURT:  No, I understand that.

3              MR. O'BRIEN:  Yeah.

4              THE COURT:  I'm just saying that's a

5    question -- it's something here seems to be a little

6    bit off --

7              MR. O'BRIEN:  Well and it may well be --

8              THE COURT:  -- in terms of what happened and

9    why it happened.

10             MR. O'BRIEN:  It may well be that there were

11   in fact acts that occurred in Orleans County based

12   upon Mr. Bellavia's residence there.  Particularly, I

13   mean, we're talking about modern communications, so

14   I'm not really prepared to -- to offer a rebuttal --

15             THE COURT:  Okay.

16             MR. O'BRIEN:  -- of that factual allegation,

17   but I don't think that that changes the fact that the

18   complaint still does not have the requisite

19   allegations regarding a conspiracy on -- by a private

20   non state actor in a 42 USC civil rights violation.

21             THE COURT:  Okay.  Okay.  All right.  Mr.

22   McMurray, I'll hear from you.

23             MR. MCMURRAY:  Well, first, I'd like to say

24   regarding the difficult language or the important

25   language in the complaint, it is not language from Ms.

1    Bellavia.  She did not communicate to Mr. Bellavia

2    like that.  Ms. King -- there are no texts from her

3    like that.  And I know it's difficult to read.  It's

4    difficult to consider.  We included it because it's

5    part of the context of the threats that were building

6    up against her.  It's not with joy or zest that we put

7    that in there.  I don't speak like that.  I'm sure

8    Your Honor you don't speak like that.  She was living

9    in fear, and there were -- in our amended brief and we

10   alluded that in the original complaint, there were --

11   it was building up and building up with threats that

12   I'm going to arrest you.  He literally says things

13   like that.  He says you're in trouble.  He's

14   threatening her, and it's relevant to the context of

15   how she was treated and what eventually happened to

16   her.

17        Um, to the point regarding the -- the

18   complaint, again, this has to be read in a light most

19   favorable to Ms. Bellavia and the facts have to be

20   taken as true, and the standard here is plausibility.

21   Now, under normal circumstances, would it be plausible

22   to call the police for harassment when there are

23   really no harassment happening?  And you just happen

24   to pick up the phone and call the DA's office in a

25   different county where your friend lives.  So I think

1    that's a pretty strange set of circumstances.  And

2    that -- the complaint from the get go and the amended

3    complaint clearly state those facts, and they're very

4    troubling facts.

5           To the residence of Mr. Bellavia, he signed

6    an affidavit right after the arrest from his residence

7    in Florida.  He lives in Naples, Florida.  His child

8    at home and many of his friends live in Orleans County

9    including Investigator Defendant Corey Black.  So I

10   mean, these facts are troubling.  It was difficult to

11   write and submit these facts to the Court, but we did

12   it to show the very difficult situation that Ms.

13   Bellavia was living in, and I should also emphasize

14   the courage that she has to bring the complaint today

15   to say that her rights were violated and that she was

16   treated in an inappropriate way.

17          We bring this complaint, and we understand

18   how serious it is and how difficult it is to bring

19   these allegations in this situation, and we recognize

20   to your point they are not friends, but people should

21   not be arrested without grounds especially by their

22   friends who happen to work for the district attorney's

23   office and haven't been a sheriff for 14 years.  This

24   man has not been a police officer for -- excuse me,

25   since 2014.

1          So I think the burden is on the defense

2     eventually to explain why his friend who also ran for

3     political office who also was part of the same

4     political circles who was working for the district

5     attorney's office in a high crimes unit happened to

6     arrest his wife.

7          THE COURT:  Okay.  Um, I'm going to think

8     about all this and I'll get a decision out.  One more

9     thing that just troubles me in general is um this

10    arrest allegedly occurred in January of 2021; correct?

11    And I don't know -- and I take it the prosecution

12    ensued shortly thereafter and was wrapped up but

13    the -- the divorce was concluded in what December of

14    2021.

15         MR. O'BRIEN:  Yes, Your Honor.

16         THE COURT:  And I know those documents are

17    under sealed but I've looked at them and there's a lot

18    of resolution of various outstanding issues between

19    the parties that just again strikes me as a little

20    curious that this would come up after all of that had

21    been resolved.

22         MR. MCMURRAY:  I can speak to that.  Ms.

23    Bellavia -- the reason why we included those texts and

24    those comments and there are literally binders of

25    similar comments, this is a woman who was living in

1  fear.  She's living in fear.  She was very -- she --

2  she had a very difficult time bringing these -- in the

3  same situation she was in in divorce court, she had a

4  very difficult time bringing these texts forward.

5  They were not considered by and large, and she was

6  afraid for a long time and she currently is afraid.

7          So the question is why is the timing of

8  this -- there's been some exception since the divorce.

9  I think she's starting to have a little more courage,

10  and the efforts by the defense, by Mr. Bellavia to

11  silence her are extremely disturbing, and they

12  continue, and the level, the extent of the legal um

13  maneuvers to make sure she can never talk about

14  anything with her life even general topics related

15  to -- to abuse and domestic violence, I've never seen

16  anything like it.  And I think the reason why we've --

17  our complaint is valid on its face is because we have

18  met the standard of plausibility saying is it

19  plausible that under these circumstances she would be

20  arrested in this matter especially given all the

21  threats by Mr. Bellavia.  Our -- if we read the facts

22  in a light most favorable to Ms. King, does she

23  deserve her day in court to figure out exactly what

24  happened?  Why did this happen?  Why were there such

25  extensive efforts to silence her and keep her quiet?

1    Does she have a right to speak out against it?

2           And so Your Honor, I hope you look at the

3    totality of the circumstances and realize that she

4    does not bring this with glee.  This is a woman who

5    continues to live in fear, who is afraid, who was

6    arrested outside of her home county.  I think the

7    entire circumstances are just completely strange, and

8    she deserves her day in court.

9           THE COURT:  Okay.  Um, now, I believe you

10   have agreed now to stipulate to unseal the underlying

11   criminal complaint; is that correct?

12          MR. MCMURRAY:  Yes, Your Honor.

13          THE COURT:  Okay.  So do you have the stip

14   with you?

15          MS. O'NEILL:  Oh.  Of course, Your Honor.

16          THE COURT:  Okay.  So that can be executed

17   today and then um then you can get the -- once that's

18   executed how quickly can -- where does that complaint

19   have to come from then?

20          MS. O'NEILL:  So I was going to ask that

21   question to Your Honor.  The way I've typically done a

22   stipulation to unseal the criminal matter, I've

23   typically sent -- once it's signed by the parties I

24   sent it to the judge who handled the criminal matter

25   which in this case was a town judge.

1            THE COURT:  Right.

2            MS. O'NEILL:  I believe that potentially

3    Your Honor could potentially so order it.  I know that

4    the criminal procedural law comes up in the issue of

5    discovery.  If you are hesitant with that, I'm fine

6    keeping it the original of having the town court judge

7    sign it.  Um, that can usually take a couple weeks or

8    so.

9            THE COURT:  Yeah.  I mean, I know federal

10   judges are often called all powerful, but I don't

11   know -- I don't know whether I have that authority but

12   --

13           MS. O'NEILL:  I know it's come up in

14   discovery context.  Obviously this is prediscovery.

15           THE COURT:  Yeah.

16           MS. O'NEILL:  So I brought both sets of

17   stipulations.

18           THE COURT:  But if a state court judge

19   ordered the documents be sealed, I think it ought to

20   be up to that person to unseal them based on the

21   parties stipulation unless somebody has a different

22   view.  But the only thing I'm certain of is that I

23   think any pleading which would be considered has to go

24   into greater detail about what exactly the criminal

25   charges were, what the elements of that charge was and

1    why there was not probable cause for those.  So I'm

2    going to write on this briefly, but I think everybody

3    should stand down until we get -- get the underlying

4    criminal complaint.

5              MR. O'BRIEN:  Your Honor, I was going to

6    suggest that particularly with respect to the fact

7    that now there is a motion to --

8              THE COURT:  Yeah.

9              MR. O'BRIEN:  -- amend the pleading pending,

10    I would ask that the scheduling order be deferred

11    until we get our hands on that file and are able

12    legally and properly to use it if appropriate.

13              THE COURT:  Yeah.  We'll -- I'll address

14    that.

15              MR. O'BRIEN:  Okay.

16              THE COURT:  And I'll get something out

17    shortly.  Okay?

18              MR. O'BRIEN:  Thank you, Judge.

19              THE COURT:  I take it -- as in every case,

20    um, I ask at the out set whether the parties have had

21    any settlement discussions, and sounds like, Mr.

22    McMurray, go ahead.

23              MR. MCMURRAY:  Before we brought the

24    charges, we asked to settle this and we are --

25              THE COURT:  That's right.  I saw your

1    letter.

2              MR. MCMURRAY:  We do not want this public.

3    Yeah.  I just want to note that.

4              THE COURT:  Yeah.  I take it there's no

5    interest in discussing those at this point; right?

6              MR. O'BRIEN:  Not at this point, Your Honor.

7              THE COURT:  Okay.  All right.  Thank you

8    all.

9              MS. O'NEILL:  Your Honor, I apologize.  Just

10   to interject one second.  Just from the county

11   defendants in terms of we received --

12             THE COURT:  You don't need to answer

13   anything right now.

14             MS. O'NEILL:  Okay.  All right.

15             THE COURT:  You'll see in my --

16             MS. O'NEILL:  Okay.

17             THE COURT:  Okay?  And then we'll see where

18   we go from there.  Okay?

19             MS. O'NEILL:  Thank you, Your Honor.

20             THE COURT:  Thank you.

21             MR. MCMURRAY:  Thank you.

22             (Proceeding concluded at 11:32 a.m.)

23

24

25

1          **CERTIFICATE OF COURT REPORTER**

2

3          I certify that this is a true and accurate

4    record of proceedings in the United States District

5    Court for the Western District of New York before the

6    Honorable Jeremiah J. McCarthy on January 24, 2023.

7

8    S/ Brandi A. Wilkins

9    Brandi A. Wilkins

10   Official Court Reporter

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25