# EXHIBIT A

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ X

DEANNA MARLENE BELLAVIA aka DEANNA KING,

|  |  |
|---|---|
| Plaintiff, | **AMENDED COMPLAINT** |
| v. | Civil Action No. 22-842 |
| ORLEANS COUNTY, ORLEANS COUNTY SHERIFF'S DEPARTMENT, ORLEANS COUNTY DISTRICT ATTORNEY, COREY BLACK, DEPUTY JOHN DOE, and DAVID BELLAVIA, | Trial by Jury |
| Defendants. | |

------------------------------------------------------------------------ X

Plaintiff DEANNA KING, by and through her attorneys, ADVOCATES FOR JUSTICE, CHARTERED ATTORNEYS, as and for this Complaint, alleges as follows:

## PARTIES

1. Plaintiff, DEANNA KING, is a resident of Batavia, New York in Genesee County.

2. Defendants, ORLEANS COUNTY, ORLEANS COUNTY SHERRIFF'S DEPARTMENT, and ORLEANS COUNTY DISTRICT ATTORNEY have an address of 14016 Route 31 West, Albion, New York 14411.

3. Defendant COREY BLACK is an investigator from Defendant ORLEANS COUNTY DISTRICT ATTORNEY and a former deputy of Defendant ORLEANS COUNTY SHERIFF'S DEPARTMENT, and has a work address of 14016 Route 31 West, Albion, New York,14411.

4. Defendant DEPUTY JOHN DOE is a deputy of Defendant ORLEANS COUNTY SHERIFF'S DEPARTMENT.

**JURISDICTION AND VENUE**

5. This action is brought pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988, and the Fourth, Fifth, Sixth Amendments to the United States Constitution.

6. Jurisdiction is founded upon 28 U.S.C. §§ 1331, 1343, and 1367.

7. Venue is proper in the United States District Court for the Western District of New York pursuant to 28 U.S.C. §§ 1391(b) and (d) because Defendant's are located in that judicial district and a substantial part of the events or omissions giving rise to the claim occurred in that judicial district.

**FACTS RELEVANT TO ALL CLAIMS**

8. Plaintiff is a well-known television and radio personality in the Rochester, New York area, with over 20 years-experience. She is the mother of three children. She resides in Batavia, New York.

9. Bellavia is the former husband of Plaintiff King. Bellavia is rightwing political radio host. His work focuses on culture issues and political flash points, such as conspiracies regarding COVID vaccines. He is most well-known, however, for receiving the Medal of Honor in 2019 from former President Donald Trump for heroics in Iraq. Separately, he is staunch Trump supporter, having worked on this campaign in 2016.

10. He parlayed notoriety from his association with Trump and known Trump associates including Michael Caputo and Carl Paladino into several lucrative contracts, book deals, and memberships on various boards and political campaigns. His radio show broadcasts in Buffalo, New York, and the surrounding areas, where his children reside, but he is a current resident of Naples Florida.

11. Plaintiff and Bellavia were married in 1999.

12. In the early years of their marriage, Plaintiff and Bellavia lived apart because Bellavia was stationed overseas. They had a young child, little money, and Plaintiff did not have a passport.

13. Since those early days of their marriage, Bellavia consistently berated and verbally abused Plaintiff in person. He engaged in this abhorrent conduct through text messages once they acquired mobile phones. Over time this abuse

14. became increasingly more violent (throwing and breaking items and directing abuse toward Plaintiff and their children).

15. Defendant repeatedly (in person, on video (documented), and through texts messages) threatened Plaintiff with violence and wished her harm.

16. Plaintiff would engage with Bellavia to defend herself and her children, especially in situations when her children would hide from Bellavia's violent outbursts. Plaintiff's parents would also often intercede to ensure the safety of their daughter and grandchildren.

17. From 2019 to 2021, Plaintiff and Bellavia were thus engaged in a very contentious divorce during which Bellavia's mistreatment of Plaintiff King continued. He also frequently threatened to arrest and discredit her using his friends from politics.

18. At one point during the proceedings, Bellavia visited the Plaintiff and told her in front of her children, "Cunt, you're going to have to sell your house." Plaintiff then said that a judge would never make her do that. Plaintiff recorded this (and many other such interactions) and the recorded Bellavia's shrill response, "A judge? I got a judge! Bring it bitch!"

19. Plaintiff then asked Bellavia if their judge was on Bellavia's "payroll." At that point, Bellavia noticed she was recording and smacked the phone out of her hand. He then left.

20. Thankfully, lawyers appointed on behalf of the children, intervened and asked the court to limit Bellavia's interaction with their two minor children.

21. Also, because of Bellavia's continuing abuse and harassment of Plaintiff via text, and upon the recommendation of the children's legal representatives, the Court ordered Bellavia exclusively to use a parenting app ("App Close," which records all communications) to communicate with Plaintiff.

22. On January 27, 2021, Defendant Investigator Corey Black, who is a right-wing political activist, lifelong friend of Bellavia, an investigator for the Orleans County District Attorney and a former Deputy of the Orleans Sheriff's Department, arrested Plaintiff without authority and without probable cause.

23. In effecting the arrest, Defendant Investigator Black posed as a Sheriff's Deputy, with the consent of the Orleans County Sheriff's Department, and conspired with Bellavia and Defendant John Doe to falsely arrest and imprison Ms. King, to discredit, humiliate, and otherwise continue the prosecution against her.

24. Specifically, on January 26, 2021, Defendant Investigator Black called Plaintiff, falsely stated he was from Orleans County Sheriff's Department, and informed Plaintiff there was a warrant out for her arrest for harassment in Orleans County.

25. Plaintiff does not live in and rarely travels to Orleans County.

26. Orleans County, however, is the location of Bellavia's former childhood home and the current location of many of his friends and acquaintances, including Defendant Investigator Black.

27. Plaintiff King suspected the call was a prank, so she hung up and called the Defendant Orleans County Sheriff's Department directly asking if the call was "real."

28. She also asked, "Is there a warrant out for me?"

29. Defendant Orleans County Sheriff's Department refused to answer Plaintiff. Plaintiff was scared and confused. She called her brother-in-law, an Undersheriff in Genesee County where she lives, and her brother-in-law confirmed that Defendant Investigator Black called the Genesee County Sheriff's Department and asked if them to send a car to Plaintiff's house, arrest her, and transport her to Orleans County.

30. Defendant Investigator Black agreed to allow Plaintiff to turn herself in the next day if her brother-in-law escorted her. Defendant Investigator Black claimed this was a "professional courtesy" to him.

31. Hearing this, Plaintiff called Defendant Investigatory Black and asked for more information. He said that he could not explain the details, but he was offering her an opportunity to turn herself in voluntary because she is sister-in-law to a Genesee County Undersheriff.

32. According to the arrest document narrative composed by Defendant Black (attached as Exhibit B) and the affidavit composed by Bellavia, Bellavia reported several major allegations. In summary:

- Harassment and Defamation: Bellavia claimed that Plaintiff King and her associates began harassing him by sending defamatory messages and making harassing phone calls to his business associates—which she denies.

- Harassing Blog Posts: Deanna allegedly posted harassing content about David on her blog—which she denies.

- Harassment via App: David stated that Deanna used the Appclose app, which was meant for communication about their children and threaten his professional career unless he complied with her divorce terms—which she denies.

5

- Non-Essential Communications: Plaintiff King allegedly contacted Bellavia about non-essential matters—which she denies.

33. Defendant King denies all these allegations.

34. Despite these allegations and narrative, Plaintiff King was only charged under NY Penal Code 240.26 (harassment in the second degree) related to her asking Bellavia to receive a COVID test before he visits his children.

35. She was also charged under NY Penal Code 240.30 (aggravated harassment in the second degree) related her asking for an insurance card.

36. As justification for this arrest, defendant Black references a list of communications on the App Close parenting app, none of which under any reasonable interpretation could be seen as violation of the referenced laws.

37. In fact, as stated, Bellavia is threatening party in the communications between them, repeatedly responding Plaintiff King's comments regarding the children in an aggressive manner and alternating between saying he wants "zero contact" and asking Plaintiff for a jump of for his car battery at Target.

38. Further, Defendant Black's first narrative sentence states, "Victim Bellavia is in the process of divorce from his wife Deanna Bellavia" showing clearly that he knew of their relationship, but he did no further investigation into the allegations by Bellavia.

39. Plaintiff was alone with her minor children when Defendant Investigator Black asked police to come and arrest her. Panicked, she made arrangements to have her children looked after and made the long drive to Orleans County the next day, accompanied by her brother-in-law.

40. Driving, she contemplated the long-term damage news of her arrest would cause to her children. She also contemplated the negative impact it could have on her career in entertainment and her general reputation.

41. In Orleans County, Plaintiff was fingerprinted and forced to take a mug shot.

42. She met with Defendant Investigator Black in a room in the Orleans County Public Safety Building.

43. At this point, Plaintiff believed that Defendant Investigator Black was a Deputy from the Orleans County Sheriff's Department.

44. Plaintiff asked why she was being arrested, and Defendant Investigator Black showed her a screen shot of Bellavia's phone log documenting a call from the couple's minor son regarding an issue with health insurance coverage, and a message on AppClose from Plaintiff requesting that Bellavia get a COVID test before the next visit with their children. It was the height of the pandemic, and Bellavia traveled nationally to large speaking engagements for his work.

45. When Plaintiff expressed disbelief, Defendant Investigator Black cryptically and rather threateningly responded, "There's more to it than that, but David didn't want to pursue it."

46. Defendant Investigator Black then confirmed that he and Bellavia are good friends.

47. Plaintiff met alone with Defendant Investigator Black and her brother-in-law except for the brief period when Defendant Investigator Black read the charges against her. At that time, a Deputy, Defendant John Doe, entered the room. He did not say anything, and Plaintiff was never apprised of his name.

48. Defendant Investigator Black knowingly engaged in the above conduct without probable cause for Plaintiff's arrest.

49. Defendant Deputy John Doe engaged in the above conduct with the knowledge that Defendant Investigator Black is not a Sheriff's Deputy.

50. Defendant Deputy John Doe knowingly engaged in the above conduct without probable cause for Plaintiff's arrest.

51. Defendant Orleans County permitted Defendant Investigator Black and Defendant Deputy Doe to arrest Plaintiff without probable cause.

52. Defendant Orleans County permitted Defendant Investigator Black and Defendant Deputy Doe to arrest Plaintiff at the instigation of Bellavia as a personal and/or political favor.

53. Plaintiff, who had never broken a law in her life, then faced her arraignment before the court.

54. When Plaintiff subsequently communicated with Bellavia, Bellavia knew details about her arrest including comments she made to Defendant Investigator Black when she appeared for arrest.

55. In the months to come, Plaintiff was required to appear repeatedly in criminal court to address the charges against her.

56. Intimidated and to avoid undue scrutiny and fearful again of possibly biased legal forum Plaintiff agreed to an Adjournment in Contemplation of Dismissal.

57. The charges against Plaintiff have since been dismissed.

58. To this day, she remains haunted by the experience, and fearful of Mr.

59.

60. Bellavia and the Orleans County Sheriff's Department. She was intentionally detained without lack of probable cause, when the Defendants knew of Plaintiff King's relationship to Bellavia, which was caused her severe emotional distress and reputational impact.

61. The divorce was finalized in December of 2021, and today Bellavia lives in Florida and has limited interaction with his children or Plaintiff.

## AS AND FOR A FIRST CAUSE OF ACTION

### (For Violation of the Fourth Amendment as against Defendants Orleans County, Orleans County Sheriff's Department, Orleans County District Attorney, Corey Black and Deputy John Doe)

62. Plaintiff repeats and realleges each and every allegation contained in the paragraphs previously set forth.

63. The policies, custom, and conduct of the defendants violated her right to be free of unreasonable searches and seizures in violation of the Fourth Amendment to the United States Constitution.

64. As a direct and proximate result of the unlawful policies and acts of the defendants described herein, the plaintiff has incurred economic damage and damage to her reputation and still suffers both physical pain and suffering and psychiatric injury all to plaintiff's damage in an amount which exceeds the jurisdictional monetary threshold of the Court, the specific amount to be proven at trial, plus reasonable attorneys' fees, costs and disbursements.

65. The defendants acted willfully, maliciously and/or with reckless disregard of the consequences of their actions. Accordingly, plaintiff is entitled to an award of punitive damages.

## AS AND FOR A SECOND CAUSE OF ACTION

### (For Violation of the Fourteenth Amendment as against Defendants Orleans County, Orleans County Sheriff's Department, Orleans County District Attorney, Corey Black and Deputy John Doe)

66. Plaintiff repeats and realleges each and every allegation contained in the paragraphs previously set forth.

67. The policies and intentional conduct of the defendants in furtherance of a personal and/or political vendetta deprived the plaintiff of her right to equal protection of the laws in violation of the Fourteenth Amendment to the United States Constitution.

68. As a direct and proximate result of the unlawful policies and acts of the defendants described herein, the plaintiff has incurred economic damage including a loss of gainful employment and damage to his reputation and still suffers both physical pain and suffering and psychiatric injury all to plaintiff's damage in an amount which exceeds the jurisdictional monetary threshold of the Court, the specific amount to be proven at trial, plus reasonable attorneys' fees, costs and disbursements.

69. The defendants acted willfully, maliciously and/or with reckless disregard of the consequences of their actions. Accordingly, plaintiff is entitled to an award of punitive damages.

## AS AND FOR A THIRD CAUSE OF ACTION
**(For Malicious Prosecution as Against Defendants Corey Black and John Doe)**

70. Plaintiff repeats and realleges each and every allegation contained in the paragraphs previously set forth.

71. The conduct of the defendant Corey Black and John Doe constituted malicious prosecution because it was carried out in pursuit of a personal vendetta and without any basis in law or fact and without sufficient factual information.

72. As a direct and proximate result of the unlawful acts of the defendants described herein, the plaintiff has incurred economic damage including a loss of gainful employment and damage to his reputation and still suffers both physical pain and suffering and psychiatric injury all to plaintiff's damage in an amount which exceeds the jurisdictional monetary threshold of the

Court, the specific amount to be proven at trial, plus reasonable attorneys' fees, costs and disbursements.

73.     The defendants acted willfully, maliciously and/or with reckless disregard of the consequences of their actions. Accordingly, plaintiff is entitled to an award of punitive damages.

## AS AND FOR A FOURTH CAUSE OF ACTION
**(Conspiracy Under § as Against Defendants Corey Black, John Doe and David Bellavia)**

74.     Plaintiff repeats and realleges each and every allegation contained in the paragraphs previously set forth.

75.     The conduct of the defendants Corey Black, John Doe and David Bellavia constituted conspiracy to violate Plaintiff's constitutional rights because the aforenamed defendants agreed to act together to effectuate Plaintiff's arrest, in pursuit of a personal and/or political vendetta, to inflict Constitutional injuries upon Plaintiff, and by the overt act of knowingly causing her to be arrested and prosecuted without probable cause.

76.     By acting as aforedescribed, Defendant has violated the Constitution.

## JURY DEMAND

77.     Plaintiff demands a trial by jury.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests that this Court enter judgment awarding Plaintiff:

a. compensatory damages, jointly and severally, in an amount to be determined at trial;

b. punitive damages against all individual defendants in an amount to be determined at trial that will deter such conduct by defendants in the future;

c. pre-judgment and post-judgment interest and recovery of his costs, including reasonable attorneys' fees pursuant to 42 U.S.C. § 1988 for all 42 U.S.C. § 1983 claims;

d. attorneys' fees and cost; and

e. such other relief as the Court finds equitable.

Dated: New York, New York
October 21, 2022

ADVOCATES FOR JUSTICE,
CHARTERED ATTORNEYS
*Attorneys for Plaintiff*

By: /s/ *Nathan McMurray*
Nathan McMurray
225 Broadway, Suite 225
New York, New York 10007
(212) 285-1400/917-923-8136
Email: aschwartz@afjlaw.com