UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

DEANNA MARLENE BELLAVIA aka
DEANNA KING,

                                    Plaintiff,        Civ. No.: 1:22-cv-00842-LJV-JJM

v.


ORLEANS COUNTY, ORLEANS COUNTY
SHERIFF'S DEPARTMENT, ORLEANS COUNTY
DISTRICT ATTORNEY, COREY BLACK,
DEPUTY JOHN DOE, and DAVID BELLAVIA,

                                    Defendants.

_____

## NOTICE OF MOTION

| | |
|---|---|
| **Nature of Action:** | Civil Rights. |
| **Moving Party:** | Plaintiff Deanna Marlene Bellavia aka Deanna King. |
| **Directed To:** | Defendants Orleans County, Orleans County Sheriff's Department, Orleans County District Attorney and Corey Black. |
| **Relief Requested:** | An Order Dismissing Defendant's Motion to Dismiss. |
| **Oral Argument:** | Requested. |
| **Dated:** | September 1, 2023 |


**By:**   *s/ Nathan McMurray*
         Nathan McMurray
Nathan D. McMurray, Esq.
Attorneys for Plaintiff
**ADVOCATES FOR JUSTICE, CHARTRED ATTORNEYS**
225 Broadway, Suite 1902
New York, New York 10007
(212) 285-1400 nmcmurray@advocatesny.com

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES                                                                      2

PRELIMINARY STATEMENT                                                              4

ARGUMENT                                                                                          5

POINT I: THE WARRANT IS NOT A COMPLETE DEFENSE BECAUSE
INVESTIGATOR BLACK OMITTED KEY INFORMATION WITH RECKLESS
DISREGARD FOR THE TRUTH                                                                 5

POINT II: THE MONELL STANDARD IS NOT AN ABSOLUTE BAR TO MUNCIPAL
LIABILITY FOR ORLEANS COUNTY; IT IS A GATEWAY TO IT                     7

POINT III: MS. KING HAS MET AN EXCEEDED THE FEDERAL PLEADING
STANDARDS BECAUSE SHE HAS STATED FACTS THAT—EVEN UNDER THE
STANDARD OF CONTEXT AND "COMMON SENSE"—SHOW THAT HER ARREST
BY HER HUSBAND'S FRIEND WAS IMPROPER                                        10

POINT IV: INVESTIGATOR BLACK IS NOT SHIELDED BY ABSOLUTE IMMUNITY
FOR HIS POLICE FUNCTIONS; AND QUALIFIED IMMUNITY DOES NOT PROTECT
HIM FROM VIOLATING KING'S RIGHTS                                                  11

CONCLUSION: MS. KING HAS PLEAD FACTS SHOWING THAT THERE WAS A
PLAUSIBILTY OF WRONGDOING; CONSTRUING THE LAW INA WAY TO SHIELDS
FURTHER INQUIRY WOULD BE UNJUSTICE                                          13

## **TABLE OF AUTHORITIES**

### **CASES**

1. Ashcroft v. Iqbal, 566 U.S. 662, (2009)

2. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)

3. Board of Comm'rs of Bryan County v. Brown, 520 U.S. 397, 433 (1997)

4. Buckley v. Fitzsimmons, 509 U.S. 259, 260 (1993)

5. Canton v. Harris, 489 U.S. 378, 379 (1989)

6. Fields v. Wharrie, 740 F.3d 1107, 1114 (7th Cir. 2014)

7.  Flanigan v. Town of Colchester, 171 F. Supp. 2d 361, 367 (D. Vt. 2001)

8.  Franks v. Delaware, 438 U.S. 154 (1978)

9.  Gleis v. Buehler, 374 Fed.Appx. 218, 220 (2d Cir. 2010)

10. Golino v. City of New Haven, 950 F.2d 864, 870 (2d Cir. 1991)

11. Harlow v. Fitzgerald, 457 U.S. 800, 819 (1982)

12. Imbler v. Pachtman, 424 U.S. 409 (1976)

13. Kelsey v. County of Schoharie, 567 F.3d 54, 60-61 (2d Cir. 2009)

14. Kelsey v. County of Schoharie, 567 F.3d 54, 61 (2d Cir. 2009)

15. Mistretta v. Prokesch, 5 F. Supp. 2d 128, 133 (E.D.N.Y. 1998)

16. Monroe v. Pape, 365 U.S. 167 (1959)

17. Monell v. New York City Dept. of Social Services, 436 U.S. 658 (1978)

18. Penate v. Kaczmarek, 928 F.3d 128, 136 (1st Cir. 2019)

19. Singer v. Fulton County Sheriff, 63 F.3d 110, 119 (2d Cir. 1995)

20. Soares v. Connecticut, 8 F.3d 917, 920 (2d Cir. 1993)

21. Taylor v. Kavanagh, 640 F.2d 450 (2d Cir. 1981)

22. United States v. Lueth, 807 F.2d 719, 726 (8th Cir. 1986)

## **STATUES**

23. Section 1983 of the Civil Rights Act of 1871, codified at 42 U.S.C. § 1983

24. New York Criminal Procedure Law § 160.50

25. New York law. See N.Y. Crim. Proc. § 1.20(34)(g)

## PRELIMINARY STATEMENT

**POINT I:  If an officer, like Investigator Black, knowingly or recklessly omits material information the arrest warrant does evidence probable cause**

In this case, Investigator Black omitted crucial details about his relationship with Bellavia and the nature of communications between Ms. King and Bellavia, and other factors. For example, the arrest warrant says very little other than citing Bellavia's claims that he was harassed in the parenting application ("App Close"). Even a quick review by Investigator Black would have shown Black (if his motives were legitimate) that it was Bellavia who was harassing King.  These omissions (among others), if included, would have changed the finding of probable cause for arrest by a neutral magistrate.

**POINT II: The Monell standard doesn't act as an absolute bar to municipal liability; rather, it serves as a gateway to it.**

A municipality can be held liable if the deprivation of rights is due to a governmental custom, policy, or usage. Defendants cite New York Criminal Procedure Law and policy to justify their actions. They use these laws to justify the practice of allowing a high-crimes investigator, like Investigator Black, to arrest an individual, like Ms. King—again, Black's friend's estranged wife— using Orleans County resources for alleged out of county martial disputes—.

**POINT III: The federal pleading standards are met because Ms. King does not just conclude that a conspiracy occurred, she plead a relationship, a motive, the**

**absence of threats by her, and other facts showing that wronging is plausible (if not probable) and may be made more evident through discovery.**

To survive a Rule 12(b)(6) motion, a complaint must contain alleged facts content that suggests (plausibility not probability) of entitlement to relief. The context and common sense play a role in determining plausibility. Given these legal standards, the relationship between Bellavia and Investigator Black, the omission of facts by Black, and the improper arrest are all plausibly stated and motions for dismissal require rejection.

**POINT IV: Prosecutors have absolute immunity for prosecutorial acts, but not for investigatory acts.**

Investigator Black's actions were more closely associated with police functions; therefore, absolute immunity doesn't apply. Under qualified immunity (the lesser standard), the objective inquiry is whether a reasonable officer would have believed their actions were lawful considering established law and available information. Investigator Black's actions were unreasonable because he arrested his friend's wife, for using a parenting application she was under court order to use, and where she harassed no one.

## ARGUMENT

### POINT I: THE WARRANT IS NOT A COMPLETE DEFENSE BECAUSE INVESTIGATOR BLACK OMITTED KEY INFORMATION WITH RECKLESS DISREGARD FOR THE TRUTH

As stated by the counsel for the defendants, acting on a warrant may act as presumptive proof of probable cause to arrest. Gleis v. Buehler, 374 Fed.Appx. 218,

220 (2d Cir. 2010). It is similarly settled law, however, that a person has a right not to be arrested or prosecuted without probable cause. Golino v. City of New Haven, 950 F.2d 864, 870 (2d Cir. 1991). A plaintiff can demonstrate that this right was violated if the officer submitting the probable cause affidavit "knowingly and intentionally, or with reckless disregard for the truth, made a false statement in his affidavit" or omitted material information, and that such false or omitted information was "necessary to the finding of probable cause." Soares v. Connecticut, 8 F.3d 917, 920 (2d Cir. 1993) see also Franks v. Delaware, 438 U.S. 154 (1978). Material omission simply means that it would have defeated a probable cause finding had it been included in the affidavit. United States v. Lueth, 807 F.2d 719, 726 (8th Cir. 1986). For example, a defendant is permitted to challenge the veracity of a warrant in limited circumstances. where the affidavit in support of a warrant is alleged to contain deliberately or recklessly false or misleading information. Id at Franks v. Delaware, 438 U.S. 154, 164-72 (1978)

As plead by Ms. King, Investigator Black and Bellavia were "friends" involved in similar political circles. Further, Ms. King alleges Investigator Black knew of their contentious divorce. Investigator Black states this in the arresting documents as does Bellavia in his own affidavit. The affidavit by Investigator Black to obtain an arrest warrant (cited as a complete defense by the defense) does not disclose his relationship with Bellavia or how on earth he got a call from Bellavia at the high-crimes unit to make the arrest in the first place. Certainly, Bellavia did not simply call 9-11 from his home in Florida and get his friend at the district attorney's office high-crimes investigation unit to respond.

As plead by Ms. King, the only grounds for arrest cited is the use of a parenting application, which King and Bellavia were ordered to communicate on regarding their children. Ms. King did not harass Bellavia on that application. Indeed, the communications on that application only featured harassment and abuse from one side—Bellavia. Would Justice Joseph Kujawa have issued an arrest warrant for a mother in a separate county had he known the full relationship between Investigator Black and Bellavia, the contentious nature of the divorce and the threats of arrest by Bellavia to King, and the innocuous nature of the communications by King to Bellavia? All of which are material facts plead by Ms. King, but deliberately or recklessly omitted by Investigator Black. The answer is quite obviously no.

### POINT II: THE MONELL STANDARD IS NOT AN ABSOLUTE BAR TO MUNCIPAL LIABILITY FOR ORLEANS COUNTY; IT IS A GATEWAY TO IT

Section 1983 of the Civil Rights Act of 1871, codified at 42 U.S.C. § 1983, provides: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects ... any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law." Here, Ms. King has plead that Investigator Black as an employee acting under the customs and polices of Orleans County violated her Constitutional Rights— namely Due Process found in both the Fifth and Fourteenth Amendments to the United States Constitution, which prohibit the deprivation of "life, liberty, or property" by the government without due process of law. Specifically, as plead, she was arrested without probable cause by Investigator Black in continuance of Bellavia's threats.

For many years, litigants were unable to sue local governments under Section 1983 for police misconduct. Monroe v. Pape, 365 U.S. 167. Monell v. New York City Dept. of Social Services established a standard for determining liability. Monell v. New York City Dept. of Social Services, 436 U.S. 658 (1978). That standard is not an insurmountable bar prohibiting liability—although defendant municipalities often argue as much. The Monell doctrine, however, "has produced a body of law that is neither readily understandable nor easy to apply." Board of Comm'rs of Bryan County v. Brown, 520 U.S. 397, 433 (1997). To apply it in a way that would allow a high-crimes investigator out of a separate county's sheriff's department to arrest the estranged wife of his friend would be unreasonable.

Under the Monell standards, a municipality can be held liable under Section 1983 if the deprivation of the plaintiff's rights under federal law is caused by a governmental custom, policy, or usage of the municipality. Id at 436 U.S. 658. The defendants directly cite a law and subsequent policy that led to the harm caused to Ms. King. Specifically, they cite New York Criminal Procedure Law § 160.50, which states that an arrest warrant may be executed by any police officer to whom it is addressed, or any other officer delegated to execute it. Further, as the defendants state, investigators in the office of a district attorney are considered police officers under New York law. See N.Y. Crim. Proc. § 1.20(34)(g). Thus, according to the defendants, under their interpretation and application of these laws in Orleans County, it is the practice of Orleans County to allow Investigators) from the high-crimes unit of the local district attorney's office (without question from Sherriff's deputies, seemingly as Investigator Black's agent) to

arrest out of county residents who are married to their friends—even for alleged parenting application squabbles.

The inclusion of "custom" along with "policy" to recognize that the practices of government officials can, "[a]lthough not authorized by written law[,] . . . be so permanent and well settled as to constitute a "custom or usage' with the force of law." Flanigan v. Town of Colchester, 171 F. Supp. 2d 361, 367 (D. Vt. 2001). Again, as cited above, it is apparently the practice or policy of the defendants to allow Investigator Black to have access to their facilities and the ability to coordinate with Orleans County Sheriff's Department to make arrests and investigations as he sees fit; although he is not an employee of the Orleans County Sheriff's Department.

Further, the Supreme Court held that a municipalities failure to train its employees could constitute a "policy" under Monell where the "failure to train reflects deliberate indifference to the constitutional rights of its inhabitants." Canton v. Harris, 489 U.S. 378, 379 (1989). Ms. King was arrested and interrogated at the behest of Investigator Black, by an Orleans County Sheriff, when there was nothing to be investigated or arrested for. The purpose, as plead, was to menace and intimidate his buddy's wife. No one was trained to speak out and ask if this was justified? The deference to Investigator Black and his coordination with Orléans County led to the deprivation of Ms. King's Constitutional rights. The possible continued deference to these actions at this early stage without further discovery will be a permanent injury to Ms. King's constitutional rights,

**POINT III: MS. KING HAS MET AN EXCEEDED THE FEDERAL PLEADING STANDARDS BECAUSE SHE HAS STATED FACTS THAT—EVEN UNDER THE STANDARD OF CONTEXT AND "COMMON SENSE"—SHOW THAT HER ARREST BY HER HUSBAND'S FRIEND VIOLATED HER RIGHTS**

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " Ashcroft v. Iqbal, 566 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "However, the standard is not akin to a "probability requirement." Id. Twombly at 554.  "In determining whether a complaint crosses the plausibility threshold, "the reviewing court [must] draw on its judicial experience and common sense." Id. Iqbal at 679.  We are seeking just "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the alleged misconduct]." Twombly, 550 U.S. at 556."

Given this standard of plausibility and not probability—relying on context and common sense—we ask the court whether it is plausible that Investigator Black acted improperly. As clearly stated in the pleadings by Ms. King (and even cited by the defense), there were such limited grounds for harassment in the actual arrest warrant. Ms. King further plead that Investigator Black and Bellavia are friends and allies. And finally, Ms. King plead that she was interrogated by Orleans County officers (again, were she did not reside or travel) at the instigation and direction of Investigator Black. Given these facts, we humbly assert that we are all beyond the legal standard of plausibility.

Given these plead facts, we ask the court to consider whether discovery will show further evidence of how a call to a friend in a high-crimes unit resulted in the arrest of an estranged wife out of county. We are eager to depose the parties, check phone

records, and finally identify the other officers involved. Therefore, we respectfully ask the court to deem Ms. King's pleadings as more than merely conclusory and find them sufficient of facts showing that it is plausible that there was a foul coordination between the defendants—coordination that discovery will show amble evidence of.

### POINT IV: INVESTIGATOR BLACK IS NOT SHIELDED BY ABSOLUTE IMMUNITY FOR HIS POLICE FUNCTIONS; AND QUALIFIED IMMUNITY DOES NOT PROTECT HIM FROM VIOLATING MS. KING'S RIGHTS

As stated by the defense, prosecutors enjoy absolute immunity for any act prosecutorial in nature. Imbler v. Pachtman, 424 U.S. 409 (1976). Absolute immunity from § 1983 liability only exists, however, for those prosecutorial activities "intimately associated with the judicial phase of the criminal process" and does not extend to any investigatory acts which are afforded only qualified immunity. Taylor v. Kavanagh, 640 F.2d 450 (2d Cir. 1981). Further, the Supreme Court has held that prosecutors do not enjoy absolute immunity when they act as investigators by engaging in activities associated more closely with police functions. Buckley v. Fitzsimmons, 509 U.S. 259, 260 (1993). "These functions have been deemed "administrative" or "investigative," and, in exercising them, "a prosecutor is in no different position than other executive officials," such as police, and "qualified immunity is the norm for them."" Penate v. Kaczmarek, 928 F.3d 128, 136 (1st Cir. 2019). Additionally, the Seventh Circuit has ruled that a prosecutor is not immune from liability for fabricating evidence during pre-trial investigations and then introducing that evidence at trial—specifically, a prosecutor cannot retroactively immunize himself from conduct by perfecting his wrong-doing by late acquiring absolute immunity after trial. Fields v. Wharrie, 740 F.3d 1107, 1114 (7th Cir. 2014).

Qualified immunity shields government officials performing discretionary functions "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Kelsey v. County of Schoharie, 567 F.3d 54, 60-61 (2d Cir. 2009). The purpose of this objective standard is to stop "lawless conduct" by officials under the false shield of their government title. Harlow v. Fitzgerald, 457 U.S. 800, 819 (1982)

The defense argues that because Investigatory Black works within the Prosecutor's Office he has absolute immunity, even though the courts have carved out exceptions for pre-trial and police functions such as those carried out by Investigator Black. Further, not only were his acts not conducted as part of the "judicial phase" they were not likely carried out at the direction of the county prosecutor. Thus, qualified immunity, at best, is the appropriate level of defense.

So, the question, under the law, is whether Investigator Black protected by qualified immunity? "In assessing an officer's eligibility for the shield, "the objective inquiry whether a reasonable officer could have believed that [his actions were] lawful, in light of clearly established law and the information the officer [] possessed." Kelsey v. County of Schoharie, 567 F.3d 54, 61 (2d Cir. 2009). Would it be reasonable for "An arresting officer advised of a crime by a person who claims to be the victim [who in this case is his friend, Bellavia], and who has signed a complaint or information charging someone with the crime, has probable cause to effect an arrest absent circumstances that raise doubts as to the victim's veracity." Singer v. Fulton County Sheriff, 63 F.3d 110, 119 (2d Cir. 1995). Further, although the defense dismisses Mistretta v. Prokesch,

5 F. Supp. 2d 128, 133 (E.D.N.Y. 1998) because the case involves a warrantless

search, the principle in that case that "some people have axes to grind" and that

knowledge of a prior relationship gives rise to a motive for false accusation certainly

would speak to whether a "reasonable officer could have believed that

[his actions were] lawful, in light of clearly established law and

the information the officer[] possessed." Id Kelsey at 61.

### CONCLUSION: MS. KING HAS PLEAD FACTS SHOWING THE PLAUSIBILTY OF WRONGDOING; CONSTRUING THE LAW IN A WAY TO SHIELD THE DEFENDENTS WOULD BE UNJUST

Amidst the intricate web of legal motions and proceedings that have transpired, a

distinct narrative takes shape: Ms. King's unwavering voice has consistently conveyed a

distressing account of her strange arrest for using a court-mandated parenting app.

Curiously, the arresting officer, coincidentally, was a friend of Bellavia. Irony surfaces as

Bellavia himself, through the very app in question, issued threats including threats of

arresting Ms. King. In simple terms (with all due regard to the court), does any of these

plead facts appear ordinary to you?

Additionally, did Bellavia call 911 to summon his friend? Why did Investigator

Black omit disclosing his personal ties to the judge? How did Orleans County fail to

scrutinize the actual texts on the parenting app prior to separating a mother from her

children? Can it truly be imagined that the impartial magistrate, if armed with knowledge

of Bellavia's threatening messages and the intertwined relationships (facts plead before

this court), would have genuinely authorized an arrest warrant?

Taking into account the context and common sense, initial deference to the plaintiff, and the standards of plausibility (rather than probability), are the pertinent legal criteria at this stage. Furthermore, applying retroactive immunity as a shield against liability, devoid of further exploration through discovery (which we believe will shed light on the plead facts and vindicate Ms. King), would constitute an affront to justice. As inferred during previous proceedings, this isn't the pursuit of an angry, bitter, or vengeful ex-wife seeking retribution. It is the act of a composed woman seeking righteous justice for the vengeful actions inflicted upon her without consequence.